## In re BHL Corporation, Declaratory Ruling #267

[641 A.2d 771]

No. 93-173

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed April 1, 1994

---

*Robert P. McClallen* of *McClallen Ruggiero P.C.*, Rutland, for Plaintiff-Appellant.

*Jeffrey L. Amestoy*, Attorney General, and *John H. Hasen*, Assistant Attorney General, Montpelier, for amicus curiae State of Vermont.

**Allen, C.J.** BHL Corporation appeals a declaratory ruling of the State Environmental Board, holding that Act 250 jurisdiction extends to excavations associated with the development of land for private use. We affirm.

The area at issue comprises nearly seventy acres in Castleton, a municipality with zoning and subdivision regulations. BHL purchased the land intending to construct a private home and sheep farm for Joanne and Roy Lewis. Joanne Lewis is an officer, shareholder and director of BHL; her husband Roy operates a commercial shale pit elsewhere in Castleton and is not affiliated with the corporation. Beginning in June 1988 and continuing into 1991, the Lewises excavated shale from the site, which involved blasting and the use of large-scale excavation equipment. Most of the shale was used in landscaping the premises. Roy Lewis sold twenty-one truckloads of shale for use off-site, but stopped selling it in the spring of 1990 when he discovered he might need an Act 250 permit. Approximately 490 cubic yards of shale were given to an excavation contractor in exchange for use of excavation equipment. Another 157 yards of shale was removed by a general contractor, with whom Lewis regularly had business dealings, for use in a commercial project.

On September 17, 1991, the Coordinator for Environmental District Commission #1 issued an advisory opinion that under Act 250, 10 V.S.A. §§ 6001–6108, BHL should have secured a permit for the extraction operations. BHL, which had not requested the advisory opinion, appealed to the Executive Officer of the State Environmental Board. The Executive Officer issued an advisory opinion stating that the District Commission Coordinator had the authority to issue the opinion, but found there was insufficient information to determine whether the development should be subject to Act 250 jurisdiction. In response, BHL requested a hearing before the Board, which was deemed a petition for a declaratory ruling pursuant to Board Rules 3(C) and 3(D).

After an evidentiary hearing and site visit, an administrative hearing panel of the Board issued a ruling on February 11, 1993, declaring that the shale extraction constituted development within the meaning of 10 V.S.A. § 6001(3) and relevant Environmental Board rules. As a result, the Board determined that the excavation aspect of the development was subject to Act 250 jurisdiction, and a permit should have been obtained.* BHL appeals the declaratory ruling pursuant to 10 V.S.A. § 6089(b); the State appeared as amicus curiae.

The resolution of this case turns on the proper construction of "development," which the Act, in relevant part, defines as

> the construction of improvements on a tract or tracts of land, owned or controlled by a person, involving more than 10 acres of land within a radius of five miles of any point on any involved land, for commercial or industrial purposes. . . . "Development" shall also mean the construction of improvements for commercial or industrial purposes on a tract or tracts of land . . . involving more than one acre of land within a municipality that has adopted permanent zoning and subdivision bylaws . . . . The word "development" shall not include construction for farming . . . purposes below the elevation of 2500 feet.

---

* Section 6081(a) mandates: "No person shall . . . commence construction on a . . . development, or commence development without a permit." 10 V.S.A. § 6081(a).

10 V.S.A. § 6001(3). It was undisputed that BHL engaged in the "construction of improvements," so the Board focused its inquiry on whether BHL's activities on the tract qualified as a "commercial purpose." Since the statute does not define the term, the Board consulted Rule 2(L), which defines "commercial purpose" as "the provision of facilities, goods or services by a person other than for a municipal or state purpose to others in exchange for payment of a purchase price, fee, contribution, donation or other object having value." Envtl. Bd. R. 2(L). The Board concluded that Lewis' sale of the twenty-one truckloads and the quid pro quo exchange of shale for excavation services satisfied the definition of "commercial purpose," thereby subjecting the extraction activities to Act 250 jurisdiction.

BHL contends that the plain meaning of § 6001(3) explicitly exempts the entirety of its project from Act 250 jurisdiction, because it constituted construction for sheep farming below 2500 feet. According to this approach, once the Board found that the primary purpose of the project was farm construction, the Board could not legitimately subject discrete aspects of the project to analysis under the statute and the Board rules to determine if they qualified as commercial activities. BHL believes that the Board construed the Act and its rules contrary to the spirit and purpose of Act 250 as legislation intended to regulate only large-scale commercial and industrial development, not residential construction and farm construction below 2500 feet.

■■ Before considering the merits of BHL's claim, we set forth the applicable standard of review of the Board's decision. Absent compelling indication of error, we will defer to the Board's interpretation of Act 250 and its own duly promulgated rules. *In re Killington, Ltd.*, 159 Vt. 206, 210, 616 A.2d 241, 244 (1992). We also will affirm the Board's conclusions of law, provided they are rationally derived from a correct interpretation of the law and findings of fact based on substantial evidence. *Id.*

■ In this case, the Board proceeded from the premise that the proper starting point for determining Act 250 jurisdiction is the actual use of the land, not necessarily the overall purpose of a development scheme. See *In re Baptist Fellowship of Randolph, Inc.*, 144 Vt. 636, 639, 481 A.2d 1274, 1276 (1984) (in con-

cluding that construction of a church building qualified as "development," Court holds that "Act 250 speaks to land use and not to the particular institutional activity associated with that land use"). The plain language of the statute and the administrative regulation does not forbid this approach. The definition of "development" in § 6001(3) does not expressly preclude the Board from parsing a given project into distinct activities that may be subject to Act 250 jurisdiction. The same holds true for the definition of "commercial purpose" in Board Rule 2(L). Without an explicit legislative mandate, the Board can rely on its own reasonable interpretation of the Act and its rules in formulating a ruling. See *In re Vitale*, 151 Vt. 580, 582–83, 563 A.2d 613, 615 (1989).

BHL argues that the Board has abused its discretion in drawing a line that intrudes upon what it characterizes as small-scale development, contrary to the legislative intent in adopting Act 250. They point to *In re Agency of Administration, State Buildings Division*, in which we noted that Act 250 jurisdiction "extends only over the impact of large scale development." 141 Vt. 68, 93, 444 A.2d 1349, 1362 (1982). But this begs the question of what qualifies as "large scale development." Resolution of this question, as a matter of statutory interpretation, is committed to the Board as the agency charged with the responsibility to execute the Act and deemed to have expertise in that regard. *In re Killington, Ltd.*, 159 Vt. at 210, 616 A.2d at 244.

In light of the Board's findings regarding the magnitude of BHL's shale excavations and the associated exchanges for money and services, we see no compelling indication that the Board erred in construing "development" and "commercial purpose" to cover the excavations. Cf. *In re R.E. Tucker, Inc.*, 149 Vt. 551, 547 A.2d 1314 (1988) (gravel pits subject to Act 250 regulation as commercial developments); *In re Orzel*, 145 Vt. 355, 491 A.2d 1013 (1985) (same). The shale excavation and removal in this case was a far cry from merely digging a residential foundation. The Board's ruling is fairly supported by the evidence, its findings, and a reasonable interpretation of Act 250 and its duly promulgated rules. We are mindful of our duty to ensure that the Board not overreach in enforcing Act 250, but

we conclude that in this case the Board has acted within the scope of its authority.

*Affirmed.*