**GREEN TREE CREDIT CORPORATION v. Stephen and Lise KENYON**

[660 A.2d 296]

No. 93-392

April 11, 1995. Defendants appeal from an award of summary judgment in favor of plaintiff Green Tree Credit Corporation and a subsequent final judgment granting plaintiff permission to repossess a mobile home. We affirm.

The facts are not in dispute. Plaintiff is a sales finance company with offices throughout the United States. It does not have an office in Vermont. Plaintiff finances consumer mobile home sales by purchasing retail installment sales contracts from mobile home dealerships.

In 1985, defendants agreed to buy a mobile home from Donald and Ann Howe. The Howes had purchased their mobile home from Brault Mobile Homes, Inc. and made monthly payments to plaintiff. The contract between the Howes and Brault had been financed by and assigned to plaintiff. It provided for a fifteen-year term, with fixed monthly installments based on a cash price of $25,376, increased by a financing charge of $35,303, or 15% per annum. Defendants negotiated for the Howes to take a second lien on the mobile home for $2500. To finance the balance, defendants agreed to assume the Howes' obligations under the original installment contract. In October 1985, the Howes, defendants and plaintiff executed a transfer of equity agreement. The finance charge and number of monthly payments were unchanged.

Defendants failed repeatedly to meet their monthly obligations. In October 1991, pursuant to 9 V.S.A. § 2603(c) (mobile home creditor remedies), plaintiff initiated an action for replevin and a deficiency judgment to enforce its contractual rights under the Motor Vehicle Retail Installment Sales Financing Act (MVRISA), Title 9, V.S.A. chapter 59. Defendants did not dispute their default or the applicability of MVRISA to the substantive provisions of the underlying contracts. Instead, defendants argued that in addition to MVRISA, plaintiff was also required to comply with Vermont's Licensed Lenders Act (LLA), 8 V.S.A. §§ 2201-2238. Section 2201 of LLA requires persons engaged in making loans to obtain a license from the Commis-

sioner of Banking and Insurance. Admittedly unlicensed under either MVRISA or LLA, plaintiff argued that the exclusive statutory scheme governing mobile home installment contracts was MVRISA. Under MVRISA, plaintiff was not required to be licensed. 9 V.S.A. § 2352. Both parties moved for summary judgment.

The trial court concluded that plaintiff was not engaged in the business of making loans and therefore did not require a license. Plaintiff then moved for and was granted a declaratory judgment. The court granted defendants leave to appeal.

The sole issue on appeal is whether plaintiff, an out-of-state sales finance company, was required to have a license pursuant to the Licensed Lenders Act. Section 2201(a) states:

> No person, partnership, association, or corporation other than a bank, savings and loan association, credit union, pawnbroker, insurance company or seller of the merchandise or service financed shall engage in the business of making loans of money, credit, goods or things in action and charge, contract for or receive on any such loan a rate of interest, finance charge, discount or consideration therefor greater than twelve percent per annum without first obtaining a license under this section, section 7002 of this title, *or sections 2352 and 2402 of Title 9* from the commissioner.

8 V.S.A. § 2201 (emphasis added). Failure to obtain a license renders the loan void and extinguishes the creditor's "right to collect or receive any principal, interest, or charges whatsoever." *Id.* § 2233(b).

Assuming plaintiff's activities constituted the business of making loans within the meaning of § 2201, those activities were also clearly retail installment transactions within the meaning of 9 V.S.A. § 2351(5). Section 2359 of Title 9 provides:

> [MVRISA] shall not affect or apply to any loans or to the business of making loans under the laws of this state, *nor shall any of the provisions of the loan or interest statutes of this state affect or apply to any retail installment transaction.* Nothing in this chapter shall be construed to impair or in any way affect any rule of law applicable to or governing retail installment sales not otherwise subject hereto. This chapter shall apply exclusively to all retail installment transactions as defined in section 2351 of this title.

(Emphasis added.)

In matters of statutory construction, we must effectuate legislative intent. *Burlington Elec. Dep't v. Vermont Dep't of Taxes*, 154 Vt. 332, 335-36, 576 A.2d 450, 452 (1990). Where a statute's meaning is plain upon its face, this Court will enforce the statute according to its terms. *Id.* Section 2359 is intended to ensure that MVRISA operates independently of loan and loan-related statutes. Thus, § 2359 operates to exclude the application of LLA. It is undisputed that under MVRISA, 9 V.S.A. § 2352, plaintiff, an out-of-state sales finance company, was not required to obtain a license.* Thus, judgment in favor of plaintiff was proper.

---

*9 V.S.A. § 2352(a) states:

> A sales finance company, if an individual residing or with a place of business in this state, or, if other than an individual, residing or qualified and with a place of business in this state, shall not engage in the business of purchasing from one or more sellers retail installment contracts without first being licensed as provided in this chapter . . . .

Defendants argue that allowing plaintiff, an out-of-state lender, to escape licensing frustrates the state's effort to ensure the solvency and liquidity of financial institutions and to protect the public against unconscionable lending practices. See 8 V.S.A. § 1. Notably, LLA seeks to regulate both in-state and out-of-state lenders. See *id.* § 2230 (out-of-state lenders soliciting loans by mail or engaged in special financing required to be licensed); *id.* § 2201 (all lenders must obtain licenses; no in-state or out-of-state distinction). While this gap in the licensing provision may reflect poor legislative policy, it is not something that this Court can remedy.

Defendants also maintain that a transfer of equity is not a retail installment contract; therefore, § 2359 does not operate to exclude that transaction from LLA's coverage. Although a transfer of equity does not meet the technical requirements of a retail installment contract, 9 V.S.A. § 2351(5) (defining retail installment contract), it does not amount to a loan either. A loan is "the creation of debt by the lender's payment of or agreement to pay money to the debtor or to a third party for the account of the debtor." Black's Law Dictionary 844 (5th ed. 1979). Here, defendants assumed the preexisting debt and plaintiff received the right to obtain repayment from an additional party. No new debt was created. Consequently, the transfer of equity is not a transaction within the scope of LLA. See 8 V.S.A. § 2201.

In view of our disposition on the applicability of § 2201, we do not address defendants' argument that a violation of LLA is a per se violation of the Consumer Fraud Act, 9 V.S.A. § 2453.

*Affirmed.*