## In re Wal*Mart Stores, Inc. and The St. Albans Group

[702 A.2d 397]

No. 95-398

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed August 29, 1997

*Peter M. Collins* and *Mark G. Hall* of *Paul, Frank & Collins, Inc.*, Burlington, for Appellants Wal*Mart Stores, Inc. and The St. Albans Group.

*David A. Barra* of *Hill, Unsworth, Barra, Bowles & Gannon*, Essex Junction, for Appellant Town of St. Albans.

*Joseph F. Cahill, Jr.* and *Timothy J. Ryan* of *Brown, Cahill, Gawne & Miller*, St. Albans, for Amicus Curiae Franklin County Industrial Development Corp.

*Thomas F. Heilmann* of *Heilmann, Ekman & Associates, Inc.*, Burlington, for Amicus Curiae Vermont Association of Realtors®, Inc.

*William E. Roper* of *Neuse, Smith, Roper & Venman, P.C.*, Middlebury, *Christopher M. Kilian* and *Mark Naud*, Law Clerk (On the Brief), Montpelier, for Amicus Curiae Vermont Natural Resources Council.

*Francis X. Murray*, South Burlington, for Amicus Curiae Franklin/Grand Isle County Citizens for Downtown Preservation.

*Jeffrey L. Amestoy*, Attorney General, and *Ronald A. Shems* and *John H. Hasen*, Assistant Attorneys General, Montpelier, for Amicus Curiae State of Vermont.

**Gibson, J.** Wal*Mart Stores, Inc. and The St. Albans Group (Wal*Mart) and the Town of St. Albans (Town) appeal an order of the Environmental Board denying Wal*Mart's application, pursuant to 10 V.S.A. chapter 151 (Act 250), for a permit to build a retail store in the Town. Wal*Mart and the Town claim that the Board erred in: (1) considering perceived adverse impacts on municipal tax revenues arising from Wal*Mart's competition in the regional market, a factor they contend is irrelevant and too speculative to be considered; (2) requiring Wal*Mart to produce a study of secondary-growth impacts to satisfy several Act 250 criteria; (3) interpreting Criterion 9(A) (impact of growth) to apply to commercial growth, not simply population growth; (4) finding that the proposed store would be "scattered development" under Criterion 9(H); (5) requiring, under Criterion 5 (traffic), a lower level of congestion than is required by the Agency of Transportation; and (6) concluding that the proposed store would unduly burden local municipalities' ability to provide municipal

and educational services under various criteria. We affirm the Board's denial of a permit under Criterion 9(A), and do not reach its ruling under Criterion 9(H).

In September 1993, Wal*Mart filed an application under Act 250 for a permit to build a retail store in the Town. The District #6 Commission found that the application satisfied all criteria listed in 10 V.S.A. § 6086(a), and granted a permit for the project. Franklin/ Grand Isle County Citizens For Downtown Preservation (Citizens), the Vermont Natural Resources Council (VNRC) and Commons Associates appealed the district commission's decision to the Board. Citizens appealed the decision with respect to Criteria 5 (traffic), 6 (impact on education), 7 (municipal services), 9(A) (impact of growth), and 9(H) (costs of scattered development). VNRC appealed the decision with respect to Criteria 9(A) and 9(H).[1]

After de novo review of the appealed criteria under 10 V.S.A. § 6089(a), the Board denied Wal*Mart's permit application on December 23, 1994 under Criteria 9(A) and 9(H). The Board also concluded that Wal*Mart had failed to satisfy Criteria 6 (impact on education) and 7 (impact on municipal services), although a permit may not be denied on these criteria alone. See 10 V.S.A. § 6087(b). In response, Wal*Mart moved to alter the decision. The Board denied the motion and issued a final order, with minor changes, on June 27, 1995.

The Board authorized reconsideration of Wal*Mart's application under 10 V.S.A. § 6087(c), but ordered that, if Wal*Mart chose to seek reconsideration, it must provide a credible study of secondary-growth impacts and propose a permit condition to alleviate the burden caused by the project for any municipality in which the public costs outweigh the public benefits.[2] The present appeal followed.

■ We give deference to the Environmental Board's interpretations of Act 250 and its own rules, and to the Board's specialized knowledge in the environmental field. *Secretary v. Earth Constr., Inc.*, 165 Vt. 160, 163, 676 A.2d 769, 772 (1996). Absent compelling indications of error, we will sustain its interpretations on appeal. *Re Chittenden Recycling Servs.*, 162 Vt. 84, 90, 643 A.2d 1204, 1208

---

[1] Citizens and VNRC also appealed under several other criteria, but neither party has pursued those claims to this Court. Commons Associates subsequently dropped its appeal.

[2] Because we affirm the denial of the permit based on Wal*Mart's failure to meet its burden under Criterion 9(A), we do not reach the issues raised under Criterion 9(H).

(1994). Our deferential level of review, however, "does not equate with mere judicial passivity in determining the propriety of Board 'interpretations' of its own rules." *In re Vitale,* 151 Vt. 580, 583, 563 A.2d 613, 615 (1989). Rather, as with all legislative schemes, we are guided by the intent of the Legislature, as evidenced by the statutes themselves. *Id.*

■ The Legislature requires that "[t]he findings of the board with respect to questions of fact, if supported by substantial evidence on the record as a whole, shall be conclusive." 10 V.S.A. § 6089(c); see *In re Killington, Ltd.,* 159 Vt. 206, 210, 616 A.2d 241, 244 (1992). Thus, we will affirm the Board's findings if based on evidence properly before the Board that is relevant and that a reasonable person might accept as adequate to support a conclusion. *In re Denio,* 158 Vt. 230, 236, 608 A.2d 1166, 1170 (1992). We will affirm the Board's conclusions of law if "they are rationally derived from a correct interpretation of the law and findings of fact based on substantial evidence." *In re BHL Corp.,* 161 Vt. 487, 490, 641 A.2d 771, 773 (1994).

I.

Wal*Mart and the Town argue that the Board's findings and conclusions on the impacts of market competition should be overturned because such impacts are irrelevant to Act 250 review. Amici VNRC and Citizens contend that Wal*Mart failed to object to the relevance of marketing and secondary-growth studies before the Board, and therefore, is precluded from raising this issue before us. See 10 V.S.A. § 6089(c) (objection that has not been urged before Board may not be considered by Supreme Court).

Although the parties did not specifically address the admissibility or use of either a marketing or a secondary-growth study, it is clear that Wal*Mart objected to the relevance of economic impacts early in the process. In a prehearing memorandum, VNRC indicated that, at the hearing on the merits, it intended to address the extent to which fiscal tax impacts resulting from the proposed project's competition with existing retail stores would violate Criterion 9(H). In response, Wal*Mart argued that Act 250 does not authorize the Board to consider anything more than the additional costs to the community for public services and facilities caused by the project. Wal*Mart specifically stated, "There is no indication that Criterion 9(H) is intended to provide a scale for measuring the overall economic impact of a retail store on private businesses located in neighboring towns."

Wal*Mart raised the issue again in its hearing memorandum and in its proposed findings of fact.

■ The Board acknowledged that the parties had questioned the relevance of the project's effect on existing retail stores and on the tax base of the various localities. It ruled against Wal*Mart's objections and concluded that the project's impacts on retail sales and tax revenues were relevant to Criteria 6, 7, 9(A) and 9(H). The question is therefore properly before the Court.

■ The Board's conclusion that the project's impact on market competition is a relevant factor under Criterion 9(A) finds support in the plain language of the statute, which requires the Board to consider the "financial capacity" of the town and the region to accommodate growth. 10 V.S.A. § 6086(a)(9)(A); see *Green Tree Credit Corp. v. Kenyon*, 163 Vt. 631, 632, 660 A.2d 296, 298 (1995) (mem.) (if statute's meaning is plain on face, Court will enforce statute according to its terms). Further, Criterion 9(A) requires consideration of the cost of "education, highway access and maintenance, sewage disposal, water supply, police and fire services and other factors relating to the public health, safety and welfare." A municipality's ability to pay for these services depends on its tax base, that is, the appraised value of property in the municipality's grand list. To the extent that a project's impact on existing retail stores negatively affects appraised property values, such impact is a factor that relates to the public health, safety, and welfare. Cf. *People v. Kohrig*, 498 N.E.2d 1158, 1166 (Ill. 1986) ("'[I]n the interest of general welfare, the police power may be exercised to protect citizens and their businesses in financial and economic matters, [and] it may be exercised to protect the government itself against potential financial loss.'") (quoting *Sherman-Reynolds, Inc. v. Mahin*, 265 N.E.2d 640, 642 (Ill. 1970)). There is no compelling indication of error in the Board's interpretation of Criterion 9(A).

The same analysis applies to Criteria 6 and 7, which require findings pertaining to "the ability of a municipality to provide educational services" and "the ability of the local governments to provide municipal or governmental services." Just as the public health, safety, and welfare depend on the tax base, so do educational and other public services. The arguments of Wal*Mart and amicus Vermont Association of Realtors®, Inc. to the contrary are unavailing.

■ Wal\*Mart contends, however, that the Board should not have considered the project's impact on market competition because projections of such impacts are speculative and unreliable. In support of this contention, Wal\*Mart relies on several studies of the accuracy of economic impact analysis that do not appear in the record. Moreover, Wal\*Mart does not indicate that this issue was ever raised before the Board. In any event, such an argument goes not to admissibility, but rather to the weight and sufficiency of the evidence. See, e.g., *Croce v. Bromley Corp.*, 623 F.2d 1084, 1094 (5th Cir. 1980) (speculative nature of evidence of future earnings affects only weight, not admissibility). There was no error in the Board's consideration of the proposed store's impact on market competition.

## II.

Wal\*Mart and the Town next argue that the Board erred in requiring Wal\*Mart to provide secondary-growth studies to satisfy Criteria 6, 7, and 9(A). The Board concluded that, when a project is likely to cause secondary growth, Criteria 6, 7, and 9(A) require the applicant to provide a secondary-growth study. Because Wal\*Mart did not provide the study, the Board concluded that Wal\*Mart had not met its burden under Criteria 6, 7, and 9(A). To correct deficiencies in the application, the Board requires Wal\*Mart to provide a study that quantifies secondary-growth impacts the proposed store will have in its vicinity, and to address the ability of the town and region to accommodate the secondary growth.

Criterion 9(A) requires the Board to consider whether a proposed development would affect the financial capacity of the town and region to accommodate growth. 10 V.S.A. § 6086(a)(9)(A). It requires the Board to consider the total growth and the rate of growth anticipated for the town and region, both without the project and with the project as proposed. *Id.* After considering the expected cost of services resulting from such growth, the Board must impose conditions to "prevent undue burden upon the town and region in accommodating growth caused by the proposed development." *Id.* Thus, the plain language of the statute requires the Board to consider the growth caused by the project (secondary growth), the anticipated costs to the town and region, and the financial capacity of the town and region to accommodate the growth.

■ In this case, the Board concluded that the proposed store would accelerate and attract substantial secondary growth. This conclusion was based at least in part on evidence presented by

Wal*Mart concerning eleven case studies of the competitive impact of other Wal*Mart stores. To make a positive finding under Criterion 9(A), the Board concluded that it would need evidence of the expected secondary growth and its associated costs and benefits to determine whether the project would cause an undue burden on the financial capacity of the town and the region. Under the Board's rules, it "may require such additional information or supplementary information as the board or commission deems necessary to fairly and properly review the proposal." Environmental Board Rule 10(B), 6 Code of Vermont Rules 12003001, at 10 (1996). We find no error in the Board's conclusions.

We reach the same result under Criteria 6 and 7 concerning a municipality's ability to provide educational, municipal, and governmental services. The inquiry focuses on the reasonableness of the burdens imposed on the local government. When a project will result in commercial development and, consequently, in added strain on the financial abilities of affected local governments, the Board must have sufficient evidence to determine whether an unreasonable burden would be placed on those governments. A secondary-growth study would greatly facilitate this inquiry. We find no error in the Board requiring such a study in this instance.

■ Wal*Mart, the Town, and amici Vermont Association of Realtors®, Inc. and Franklin County Industrial Development Corporation argue that by including the impact of secondary growth in its review of Wal*Mart's permit application, the Board is, in effect, reviewing small projects that do not individually fall within Act 250 jurisdiction. According to the project proponents, such review usurps local control and makes Vermont unfriendly to business. We note that because the Town has adopted zoning and subdivision regulations, a project in the Town does not trigger Act 250 jurisdiction unless it involves ten or more acres of land. 10 V.S.A. § 6001(3). It is not apparent to us how the requirement of a secondary-growth study amounts to a de facto exercise of jurisdiction over projects that involve less than ten acres of land. The purpose of such a study herein is to assess secondary-growth impacts caused by Wal*Mart and is not a dispositive review of subsequent small-scale developments that will be subject to local control. See *In re Rusin*, 162 Vt. 185, 190, 643 A.2d 1209, 1211 (1994).

■ ■ Wal*Mart contends that it is unfair to use a secondary-growth study to devise permit conditions, essentially requiring Wal*Mart to mitigate other development. We decline, however, to

review the validity of a permit condition that does not exist. Cf. *In re Taft Corners Assocs.*, 160 Vt. 583, 588, 632 A.2d 649, 652 (1993) ("[W]e decline to review a [Board] decision that is not a final disposition of the matter."). The proponents further contend that the studies required by the Board are too speculative to be an Act 250 permit requirement. Again, the speculative nature of secondary studies affects the weight of the evidence not its admissibility. See *Croce*, 623 F.2d at 1094.

### III.

Wal*Mart and the Town appeal the Board's conclusion that the term "growth" in Criterion 9(A) (impact of growth) includes economic as well as population growth. Specifically, they urge application of ejusdem generis, a rule of statutory construction in which general terms that follow specific terms are limited or restricted to those earlier specified, and will not include any classes greater than those to which the particular words belong. Cf. *Vermont Baptist Convention v. Burlington Zoning Bd.*, 159 Vt. 28, 30, 613 A.2d 710, 711 (1992) (when construing enactment with series of defining terms, Court will apply rule of ejusdem generis, and latter general terms will be construed to include only things similar in character to those specifically defined). They argue that the word "growth," wherever it appears in Criterion 9(A), does not include "commercial growth," because the term "growth in population" in the first sentence restricts the meaning of the word "growth" throughout the section. In addition, Wal*Mart refers to documents published by the Board to demonstrate that the term is limited to population growth.

When interpreting statutes, our primary task is to discern the Legislature's intent and to give effect to that intent. *State v. Ben-Mont Corp.*, 163 Vt. 53, 57, 652 A.2d 1004, 1007 (1994). In determining legislative intent, we "look beyond the language of a particular section, standing alone, to 'the whole statute, the subject matter, its effects and consequences, and the reason and spirit of the law.'" *Spears v. Town of Enosburg*, 153 Vt. 259, 262, 571 A.2d 604, 605-06 (1989) (quoting *In re R.S. Audley, Inc.*, 151 Vt. 513, 517, 562 A.2d 1046, 1049 (1989)). Thus, "[a]lthough rules of statutory construction may be helpful in interpreting the meaning of statutes, they are secondary to our primary objective of giving effect to the intent of the legislature." *Board of Trustees of Kellogg-Hubbard Library, Inc. v. Labor Relations Bd.*, 162 Vt. 571, 575, 649 A.2d 784, 786 (1994).

In this case, the limited construction urged by appellants conflicts with the express legislative intent of the statute. When it enacted Act 250, the Legislature included a statement of intent, declaring it necessary to regulate the use of land to insure that permits are granted only where the uses "are not unduly detrimental to the environment, *will promote the general welfare through orderly growth and development* and are suitable to the demands and needs of the people of this state." 1969, No. 250 (Adj. Sess.), § 1 (emphasis added).

Three years later, the Legislature amended Act 250 and clarified the purpose of the Act. See 1973, No. 85. Criterion 9(A) (impact of growth) was part of the 1973 amendment, which was accompanied by a statement of legislative intent and findings to guide implementation of the statute. See 10 V.S.A. § 6042 (history to section). Therein, the Legislature called for statewide planning based on "a projection of the reasonably expected *population increase and economic growth.*" 1973, No. 85, § 7(a)(4)(C) (emphasis added). Similarly, the Legislature called for provision of governmental and public utility services "based upon a projection of reasonably expected *population increase and economic growth.*" *Id.* § 7(a)(15) (emphasis added). Both Findings are entitled "Planning for Growth."

We conclude that the Legislature intended the word "growth," as used in Criterion 9(A), to apply to economic, as well as population, growth. See *Southview Assocs. v. Bongartz*, 980 F.2d 84, 89 (2d Cir. 1992) (Legislature in Act 250 recognized importance of economic growth). Accordingly, we see no compelling indication of error in the Board's interpretation of Criterion 9(A).

## IV.

In addition to denying the permit under Criteria 9(A) and 9(H), the Board discussed other criteria that Wal*Mart must address in any subsequent proceedings. Under Criterion 5 (traffic), the Board concluded that the proposed project is in a rural, not urban, area, and that Wal*Mart must provide a plan appropriate for the lower level of traffic congestion experienced in rural areas.

AOT has established graduated standards for traffic flows, or "Levels of Service" (LOS), on a scale from "A" to "F," with A addressing the lightest flows and F the heaviest. As a general matter, AOT has determined that LOS D (twenty-five- to forty-second delay per average vehicle) is acceptable in urban areas, but that LOS C

(fifteen- to twenty-five-second delay per average vehicle), a higher standard, is required in rural areas. AOT experts testified that the intersection at issue is in an urban area and therefore requires only traffic LOS D. Wal*Mart and the Town argue that the Board must accept AOT's determination on this issue. They argue that the Board exceeded its legislative authority and improperly intruded on the authority granted to AOT by ruling LOS D acceptable only in compact urban centers rather than generally in urban areas. We disagree.

Criterion 5 states that no development shall "cause unreasonable congestion or unsafe conditions with respect to the use of the highways, waterways, railways, airports and airways, and other means of transportation." 10 V.S.A. § 6086(a)(5). The Board ruled that in areas outside "compact urban centers," congestion levels below LOS C are unreasonable. The Board also found that the area at issue in this case was rural and that the project would result in LOS D level of traffic at the intersection of Newton Street and Route 7. It concluded that such a congestion level would be unreasonable, and that if Wal*Mart pursued reconsideration, it would be required to provide the Board with a plan adequate to meet LOS C at all affected intersections.

Under Criterion 5, the Board must make its own determination as to the nature of the area and the level of service appropriate for that area. See *In re Agency of Transp.*, 157 Vt. 203, 206, 596 A.2d 358, 359 (1991). Moreover, the Board's traffic requirements are limited to the context of Act 250. The Board's conclusion does not mean that, at intersections outside compact urban areas, LOS C is the standard to be used by AOT. The Board has simply determined that, for the purposes of Criterion 5, a traffic flow below LOS C at intersections outside compact urban areas is "unreasonable." See *id.* at 208, 596 A.2d at 360 (that less stringent requirements exist elsewhere does not preclude stricter Act 250 requirements). We see no compelling error in the Board's conclusion.

Wal*Mart asserts, for the first time in its reply brief, that the Board's traffic standard must be adopted pursuant to formal rulemaking under the Administrative Procedure Act. We need not reach this issue, however, because "issues not briefed in the appellant's or the appellee's original briefs may not be raised for the first time in a reply brief." *Bigelow v. Department of Taxes*, 163 Vt. 33, 37, 652 A.2d 985, 988 (1994). Wal*Mart also argues that the Board's

determination violates a Memorandum of Understanding between the Board and AOT. Although Wal*Mart quotes portions of the Memorandum in its brief, the Memorandum does not appear as part of the appellate record and is thus beyond our review. See *Morse v. Morse*, 126 Vt. 290, 292, 229 A.2d 228, 230 (1967) (facts outside record of case cannot be considered on appeal).

## V.

Wal*Mart and the Town argue that the Board erred in concluding that the proposed development will cause an undue burden under Criterion 6 (impact on education) by adding six children to the school system. They maintain that six students represent 0.2% of the student population, and such a de minimis impact cannot be an undue burden as a matter of law. Moreover, they contend that the Board's findings predict a net job loss to the region, which would result in a decline in school population, offsetting the six additional students.

We do not read the Board's decision as concluding that six additional children would be an undue burden on the school system. Rather, the Board concluded that Wal*Mart failed to meet its burden of production with respect to Criterion 6. Although the Board found that the project would result in six additional children, it also stated that it is possible that job loss would result in an offsetting decline in student population if parents moved away in search of jobs. The Board found, however, that the record did not contain sufficient evidence to support such a finding. Similarly, the Board concluded that absent evidence of secondary-growth impact, the Board was unable to conclude that the project "[w]ill not cause an unreasonable burden on the ability of a municipality to provide educational services." 10 V.S.A. § 6086(a)(6).

Although Wal*Mart did not bear the burden of proof with respect to Criterion 6, once Wal*Mart had offered evidence showing that the project would cause a burden on regional education services, the Board could properly require Wal*Mart to produce additional evidence demonstrating its plan to reduce or eliminate that burden. See *Denio*, 158 Vt. at 237, 608 A.2d at 1170 (nothing in language of Act 250 prevents Board from finding against applicant on issue even though applicant does not have burden of proof on that issue). We see no error in the Board's conclusion.

*Affirmed.*