STATE OF VERMONT
SUPERIOR COURT — ENVIRONMENTAL DIVISION

|  |  |  |
|---|---|---|
| In re Champlain Parkway Act 250 Permit | { | Docket No. 68-5-12 Vtec |
| (Appeal from Act 250 Permit No. 4C0438-17) | { |  |

## Decision on Amended Motion for Party Status

The City of Burlington (the City) and the State of Vermont Agency of Transportation (VTrans) applied for an Act 250 permit for a project generally described as the completion and construction of the Champlain Parkway (the Parkway) in Burlington, Vermont. As proposed, the Parkway would connect Interstate I-189 to a new roadway extending to Lakeside Avenue and would require the reconstruction of Lakeside Avenue and resurfacing and other improvements to Pine Street between Lakeside Avenue and Main Street. On April 27, 2012, the District 4 Environmental Commission (the Commission) issued Findings of Fact, Conclusions of Law, and an Order, which concluded that the project as proposed complies with all Act 250 criteria but criteria 1(B) (wastewater) and 4 (erosion control). The Commission's Conclusions of Law and Order directed the City and VTrans to submit an application addressing these last two criteria once the project receives relevant stormwater permits. Several parties have appealed the Commission's decision, including Vermont Railway, Inc. (VTR). VTR has also appealed the Commission's determination to deny VTR party status under Act 250 criteria 1(E), 9(A), 9(K), and 10. Currently pending before this Court is VTR's amended motion for party status.

In this proceeding, VTR is represented by Eric R. Benson, Esq. The City, which has opposed VTR's motion for party status, is represented by Brian S. Dunkiel, Esq. and Elizabeth H. Catlin, Esq. The other parties that have appeared in this matter have not filed pleadings concerning VTR's motion.

## Factual Background

In order to put the pending motion into context, the Court recites the following facts, which it understands to be undisputed unless otherwise noted:

1.      On April 15, 2011, the City and VTrans applied for an Act 250 permit for construction of the Parkway, a proposed two-lane divided street connecting I-189 in South Burlington to

1

Lakeside Avenue in Burlington, then following Lakeside Avenue east to Pine Street, and continuing north to terminate at Main Street in Burlington.

2. The Parkway as currently permitted is a substantially modified version of the Southern Connector, first permitted by the Commission under Act 250 in 1981.

3. Under the original Act 250 permit granted in 1981, the Southern Connector was permitted as a four-lane highway connecting I-189 and Shelburne Road to Battery and King Streets in Burlington.

4. Final plans for the first part of the Southern Connector were approved by a permit amendment in 1985, and several changes to the final plans were approved by permit amendments in 1987. The first and southernmost portion of the roadway was constructed in the late 1980s.

5. The Commission approved final plans for the second part of the Southern Connector in a permit amendment issued September 5, 1991. This portion of the Southern Connector was never built, however. Discovery of hazardous waste in the Pine Street Barge Canal and subsequent U.S. Environmental Protection Agency remediation efforts at the site halted further work on the project.

6. In the mid-2000s, a new project design emerged that significantly changed the Southern Connector as originally proposed. The design reduced the proposed roadway from four to two lanes, abandoned the section that would have cut through the Pine Street Barge Canal, and added pedestrian and bicycle transportation features. This modified plan is now known as the Champlain Parkway.

7. Despite the significant differences between the Southern Connector as originally proposed and the Parkway, the Act 250 permit that the City and VTrans currently seek for the Parkway is an amendment to the original permit granted in 1981.

8. The Commission granted VTR party status in the 1981 proceeding regarding the initial permit under Act 250 criterion 9(K) (development affecting public investments).

9. In response to the City and VTrans' April 15, 2011 application for an Act 250 permit for the current Parkway plan, the Commission held a prehearing conference on May 19, 2011. At the conference, the Commission heard requests for party status in the application hearing, and it made preliminary party status decisions. The subsequent Prehearing Conference Report and Order issued by the Commission shows that the Commission granted VTR preliminary party

2

status under Act 250 criteria 1(B), 1(E), 5, 8, 9(A), and 10. (City Opp'n to VTR Party Status Mot., Attach. 1, filed July 2, 2012.)

10. On April 27, 2012, the Commission issued Findings of Fact, Conclusions of Law, and an Order, which concluded that the project as proposed complies with all but two Act 250 criteria. In its Order, the Commission also made final determinations regarding party status. The Commission granted final party status to VTR only under criteria 1(B) (wastewater); 5 (traffic); and 8 (aesthetics). The Commission denied VTR final party status under criteria 1(E) (streams); 9(A) (impact of growth); and 10 (conformance with local or regional plan). Finally, according to the Commission, it did not grant VTR party status under (9)(K) "because VTR never requested it." Re: City of Burlington & VTrans, No. 4C0438-17, Findings of Fact, Concl. of Law and Order, at 3 (Dist. 4 Comm'n Apr. 27, 2012).

11. VTR timely appealed the Commission's decision to this Court on May 25, 2012.[1]

## Discussion

In its amended motion for party status, VTR asserts that it is entitled to party status under Act 250 criteria 1(E) (streams); 9(A) (impact of growth); 9(K) (development affecting public investment); and 10 (conformance with local or regional plan). In its opposition, the City contends that this Court should not grant VTR party status under any of these criteria. The City first argues that VTR does not have standing to seek party status before this Court under Act 250 criterion 9(K) because VTR failed to request party status under that criterion from the Commission. Second, the City argues that even if the Court overlooks VTR's alleged procedural failure, VTR cannot meet the substantive standards necessary to claim party status under criteria 1(E), 9(A), 9(K), or 10.

For the reasons detailed below, we conclude as a matter of law that, under 10 V.S.A. § 8504(d)(2)(B), VTR has standing to appeal the Commission's denial of its party status under

---

[1] On June 13, 2012, VTR filed a motion requesting that the Court grant it party status under Act 250 criterion 9(K). The City responded by opposing VTR's motion and filing a motion requesting that this Court deny VTR party status under criteria 1(E), 9(A), and 10 and strike Questions relating to those criteria in VTR's Statement of Questions. VTR subsequently filed a response in which it also moved to amend its motion for party status. Judge Thomas G. Walsh granted VTR's motion to amend its motion for party status at a status conference held on August 6, 2012. On August 13, 2012, VTR filed an amended motion requesting that the Court grant it party status under Act 250 criteria 1(E), 9(A), 9(K), and 10. The City filed an opposition to VTR's amended motion on August 27, 2010 and again requested that the Court strike those Questions posed by VTR related to criteria 1(E), 9(A), 9(K), and 10.

criterion 9(K). We also conclude that VTR is entitled to party status before this Court as to Act 250 criteria 1(E), 9(K), and 10, but is not entitled to party status under criterion 9(A).

## I.  Standing to Appeal and Seek Party Status under Criterion 9(K)

Any person aggrieved by an act or decision of a district commission in a proceeding to review an Act 250 permit application may appeal that act or decision to this Court. Id. § 8504(a). Generally, however, that person must have (1) been granted party status by the district commission, (2) participated in the proceedings before the district commission, and (3) retained party status at the end of the district commission proceedings. Id. § 8504(d)(1). The person may only appeal those issues under the Act 250 criteria to which that person was granted party status. Id. Notwithstanding these restrictions, a person may also appeal a district commission decision if this Court determines that the appeal falls under certain exceptions, including when the decision being appealed is the district commission's grant or denial of party status. Id. § 8504(d)(2)(B).

In its opposition to VTR's amended motion for party status under criterion 9(K), the City argues that VTR failed to meet the procedural requirements outlined in 10 V.S.A. § 8504(d)(1). Specifically, the City claims that VTR "never requested or was granted criterion 9(K) party status before the District Commission." (City Opp'n to VTR Am. Party Status Mot. 5, filed Aug. 27, 2012.) The City provides several documents in support of this assertion, including conference reports and orders issued by the Commission during the permit application review process and VTR's own proposed findings of fact and conclusions of law, which indicate that VTR did not have preliminary party status under criterion 9(K). (City Opp'n to VTR Party Status Mot., Attach. 1–4, filed July 2, 2012.) While VTR disagrees with the claim that it never requested party status under criterion 9(K), it appears from the record that, at the least, VTR did not seek preliminary party status from the Commission under criterion 9(K) in the same manner in which it sought party status under criteria 1(B), 1(E), 5, 8, 9(A), and 10.

VTR notes in its amended motion for party status that it was admitted as a party under criterion 9(K) by the Commission during the 1981 permit application review process for the Northern and Southern Connector. The Parkway project as currently proposed is the successor to the Northern and Southern Connector, and the permit under review is technically an amendment to the original permit. The fact that VTR was once a party under criterion 9(K) does not, however, automatically grant it party status under that criterion in the review of a

4

permit amendment.[2] Confusion over this issue may have contributed to VTR's failure to request party status from the Commission under criterion 9(K) in the same manner in which it sought party status under criteria 1(B), 1(E), 5, 8, 9(A), and 10. (See VTR Reply to City Opp'n to VTR Party Status Mot. 1–2, filed July 11, 2012.)

In any case, the Commission appears to have allowed VTR to submit testimony regarding criterion 9(K) during the permit hearing process[3] and took the unusual step of denying VTR final party status under 9(K), despite the fact that, in the words of the Commission, "VTR never requested it." Re: City of Burlington & VTrans, No. 4C0438-17, Findings of Fact, Concl. of Law and Order, at 3 (Dist. 4 Comm'n Apr. 27, 2012). Under 10 V.S.A. § 8504(d)(2)(B), a person may appeal a decision of a district commission notwithstanding § 8504(d)(1) if the appeal is of the commission's denial of party status to that person. Irrespective of whether or when VTR properly requested preliminary party status under criterion 9(K) from the Commission, the Commission explicitly denied VTR final party status under that criterion.[4] In Question 12 of its amended Statement of Questions, filed on August 30, 2012, VTR asks whether it should have party status under criteria 1(E), 9(A), 9(K), and 10. Accordingly, we find that VTR does have standing to appeal, and therefore, seek party status before this Court for criterion 9(K) interests under 10 V.S.A. § 8504(d)(2)(B).

---

[2] Under Act 250 Rule 34(C), which governs permit amendments that represent material changes to permitted projects or existing permits, a permit amendment may be "subject to a new application process including the notice and hearing provisions of 10 V.S.A. Sections 6083, 6083a, 6084 *and 6085*." 16-5 Vt. Code R. § 200:34(C) (2009) (emphasis added). 10 V.S.A. § 6085(c) establishes who may seek party status in an Act 250 permit review process.

[3] Regarding VTR's final party status under criterion 9(K), the Commission wrote, "Testimony under 9(K) – traffic related issues, was heard concurrently with testimony given under Criterion 5. That fact does not automatically grant party status under Criterion 9(K)." Re: City of Burlington & VTrans, No. 4C0438-17, Findings of Fact, Concl. of Law and Order, at 3 (Dist. 4 Comm'n Apr. 27, 2012). We interpret this statement as suggesting that the Commission viewed at least some of VTR's testimony during that hearing as falling under criterion 9(K). However, in its opposition to VTR's amended motion for party status, the City argues that, while testimony under criterion 9(K) was heard by the Commission concurrent with testimony under criterion 5, VTR's testimony during that particular hearing fell under criterion 5.

[4] Although the Commission does not use the word "deny" in its Findings of Fact, Conclusions of Law and Order in reference to VTR's final party status under criterion 9(K), it does devote an entire paragraph to that status, which concludes with the sentence: "Accordingly, the Commission *does not grant* VTR party status under Criterion 9 (K)." Re: City of Burlington & VTrans, No. 4C0438-17, Findings of Fact, Concl. of Law and Order, at 3 (Dist. 4 Comm'n Apr. 27, 2012) (emphasis added).

## II. Party Status under Criteria 1(E), 9(A), 9(K), and 10

In its opposition to VTR's amended motion for party status, the City does not challenge VTR's standing on procedural grounds to seek party status before this Court under criteria 1(E), 9(A), and 10. Thus, having determined that VTR has procedural standing to seek party status under criterion 9(K), we will consider the merits of VTR's motion for party status under all four criteria.

VTR seeks party status under 10 V.S.A. § 6085(c)(1)E), under which "[a]ny adjoining property owner or other person who has a particularized interest protected by [Act 250] that may be affected by an act or decision by a district commission" is entitled to party status. VTR may qualify for party status under this subsection if it shows (1) that it has a particularized interest; (2) that the interest is protected by the Act 250 criteria for which it is seeking party status; and (3) that this interest may be affected by the Commission's issuance of the land use permit currently under appeal. In re Granville Mfg. Co., No. 2-1-11 Vtec, slip op. at 6 (Vt. Super. Ct. Envtl. Div. July 1, 2011) (Durkin, J.). VTR must demonstrate that its particularized interests are not general policy concerns shared with the general public. In re Pion Sand & Gravel Pit, No. 245-12-09 Vtec, slip op. at 7 (July 2, 2010) (Durkin, J.); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (in federal cases, a plaintiff must allege a "concrete and particularized" injury to have standing); Parker v. Town of Milton, 169 Vt. 74, 77–78 (1998) (adopting the federal standing requirements).

Finally, VTR must show a causal connection between the Commission's decision to approve the Parkway permit and any potential impacts to its particularized interests. Pion, No. 245-12-09 Vtec, slip op. at 7; see also Granville, No. 2-1-11 Vtec, slip op. at 6. In demonstrating this causal connection, VTR need only provide an "offer of proof" that the Project *may* affect its interests. Pion, No. 245-12-09 Vtec, slip op. at 7. (quoting In re Costco Act 250 Permit Amendment, No. 143-7-09 Vtec, slip op. at 1 (Dec. 4, 2009) (Durkin J.)). The offer of proof must be more than mere speculation and theory, and VTR cannot adequately demonstrate a causal connection with "unsupported assertions that vaguely defined interests" may be affected by the Parkway project. Id. (quoting Re: Vill. of Ludlow, No. 2S0839-2-EB, Mem. of Decision, at 4 (Vt. Envtl. Bd. May 28, 2003); see also Lujan, 504 U.S. at 560 (a plaintiff must allege an "actual or imminent, not conjectural or hypothetical" injury to have standing and show a "causal connection between the injury and the conduct complained of" (citations omitted)). Thus, for

6

this Court to grant VTR party status under a particular Act 250 criterion, VTR must make a showing "that there is a reasonable possibility" that its particularized interests may be affected by a decision on the Parkway project. In re Bennington Wal-Mart, No. 158-10-11 Vtec, slip op. at 9–10 (Vt. Super. Ct. Envtl. Div. Apr. 24, 2012) (Walsh, J.).

In light of these requirements, we analyze the potential impacts that granting an Act 250 permit will have on VTR's particularized interests under Act 250 criteria 1(E), 9(A), 9(K), and 10.

### A. Criterion 1(E)

Criterion 1(E) requires that

> the development or subdivision of lands on or adjacent to the banks of a stream will, whenever feasible, maintain the natural condition of the stream, and will not endanger the health, safety, or welfare of the public or of adjoining landowners.

10 V.S.A. § 6086(a)(1)(E).

VTR argues that it has a particularized interest under criterion 1(E) that would be affected by the proposed project. Specifically, VTR alleges that the proposed creation of a culvert carrying Englesby Brook under the Parkway could increase the flow of the brook and cause the failure of a preexisting downstream culvert that carries the brook under VTR's main rail line. In support of its argument, VTR offers exhibits, including a map of Englesby Brook and a 1981 agreement between VTR, the City, and the State of Vermont that notes VTR's concerns about the effect on VTR's main rail line of a large culvert under the then-proposed Southern Connector. (VTR Am. Party Status Mot., Exs. C & FF, filed Aug. 13, 2012.) VTR also states that it will present the testimony of several VTR employees regarding the possibility of rail bank failure and train derailment—dangers to the public that could be caused by the proposed Englesby Brook culvert under the Parkway.

We first conclude that VTR has a sufficiently particularized interest under criterion 1(E). VTR's rail line crosses Englesby Brook a short distance downstream of the Parkway's proposed culvert. (See VTR Am. Party Status Mot., Ex. FF, filed Aug. 13, 2012.) VTR's interest in the integrity of the culvert under its tracks is particular to VTR and not simply a general policy concern shared with the public. VTR has also provided a sufficiently specific and concrete offer of proof to demonstrate that construction of the Parkway may affect its interest in maintaining its rail line. VTR offers a map showing the downstream proximity of VTR's rail line and the existing culvert to the proposed culvert under the Parkway. Id. VTR also offers to provide the testimony of three VTR employees regarding the Project's potential to create "a hazardous

7

flooding of a rail bank on Englesby Brook." (VTR Am. Party Status Mot. 6, 9–13, filed Aug. 13, 2012.)  By detailing the names of these witnesses, the addresses at which they can be reached, and the scope and content of their testimony, VTR has made a concrete offer of proof for the purposes of seeking Act 250 party status before this Court.  See Pion, No. 245-12-09 Vtec, slip op. at 7 (quoting In re RCC Atl., Inc., No. 163-7-08 Vtec, slip op. at 9 (Vt. Envtl. Ct. May 8, 2009) (Durkin, J.)).

In light of this evidence, VTR has sufficiently alleged a reasonable possibility of injury to its particularized interests protected under criterion 1(E).  Accordingly, VTR is entitled to party status under 10 V.S.A. § 6085(c)(1)(E) with respect to criterion 1(E).

### B.  Criterion 9(A)

Criterion 9(A) requires a district commission, in deciding on a permit, to

> take into consideration the growth in population experienced by the town and region in question and whether or not the proposed development would significantly affect their existing and potential financial capacity to reasonably accommodate both the total growth and the rate of growth otherwise expected for the town and region and the total growth and rate of growth which would result from the development if approved.

10 V.S.A. § 6086(a)(9)(A).  The plain language of criterion 9(A) requires a district commission to consider the growth caused by the project, the projected costs to the town and region, and the financial capacity of the town and region to accommodate the growth.  In Re Wal-Mart Stores, Inc., 167 Vt. 75, 82 (1997).  Under criterion 9(A), growth is interpreted to include economic growth as well as population growth.  Id. at 85.  Finally, the statute directs a district commission, in approving a permit, to ensure that there is no "undue burden upon the town and region in accommodating growth caused by the proposed development or subdivision."  10 V.S.A. § 6086(a)(9)(A).

VTR argues that it has a particularized interest under criterion 9(A) that will be adversely affected by construction of the Parkway as proposed.  In its amended motion for party status, VTR claims that three aspects of the Parkway project could or will harm rail services in Burlington: (1) the possibility of damage to the main rail line at Englesby Brook due to the proposed Parkway culvert; (2) the elimination of two rail spurs that would foreclose the possibility of installing "a Wye track" necessary for bringing Amtrak passenger rail services to Burlington; and (3) the elimination of "at least six (6) private properties['] rail access and critical car storage for existing rail operations."  (VTR Am. Party Status Mot. 8, filed Aug. 13, 2012.)

8

Because "[e]conomic growth in Burlington depends in part upon having a viable fully functioning railroad transportation system," VTR contends that the Parkway as proposed would negatively impact economic growth in the City. Id. As a provider of commercial rail services in Burlington, VTR has a particularized interest in the ability of the City and region to accommodate any economic and population growth caused by the Parkway that may impact City rail services.

VTR fails, however, to provide an offer of proof that the Parkway will affect the ability of the City or region to reasonably accommodate either economic or population growth caused by the Parkway. See 10 V.S.A. § 6086(a)(9)(A). VTR never ties the alleged and undefined harm the Project will cause to Burlington's economic growth to the ability of the City or region to accommodate such growth. VTR does imply that the Project, by inhibiting future development of commercial rail in the City, could one day lead to unchecked road traffic that the City could not reasonably accommodate. VTR fails to support this claim, though, with any offer of proof. Without making some tangible connection between the Parkway's alleged potential to harm rail services and the ability of the City or region to reasonably accommodate growth, VTR does not raise a reasonable possibility that its particularized interests under 9(A) will be affected by a decision on the Parkway permit. Accordingly, VTR has failed to demonstrate that it is entitled to party status under 10 V.S.A. § 6085(c)(1)(E) with respect to criterion 9(A).

### C. Criterion 9(K)

Criterion 9(K) allows an Act 250 permit to be granted for development

> adjacent to governmental and public utility facilities, services, and lands . . . when it is demonstrated that . . . the development . . . will not unnecessarily or unreasonably endanger the public or quasi-public investment in the facility, service, or lands, or materially jeopardize or interfere with the function, efficiency, or safety of, or the public's use or enjoyment of or access to the facility, service, or lands.

10 V.S.A. § 6086(a)(9)(K). This criterion "seeks to protect state and local governments from adverse fiscal impacts on public facilities and investments that are adjacent to the proposed project." In re St. Albans Grp. & Wal-Mart Stores, Inc., No. 6F0471-EB, Mem. of Decision, at 9 (Vt. Envtl. Bd. Apr. 15, 1994).

VTR argues that it has a particularized interest protected under criterion 9(K) that would be affected by construction of the Parkway as proposed. VTR alleges that the elimination of "approximately 2000 feet of railroad siding tracks used by [VTR] in its railroad traffic

9

operations" as called for by the Parkway project will endanger public investment in railroad infrastructure and limit accessibility to rail service. (VTR Am. Party Status Mot. 2, 9–12 filed Aug. 13, 2012.) VTR also claims that proposed "adjustments to the active warning devices that the railroad uses and maintains at an at grade highway railroad crossing," made without a full railroad crossing diagnostic and necessary upgrades to the crossings, will threaten public safety. Id. We conclude that VTR, as the operator of the rail line that may be affected by construction of the Parkway, has a sufficiently particularized interest in these potential threats to public investment in and the public safety of the rail lines and rail crossings.

VTR has also made a sufficiently concrete offer of proof that the two above actions may impact VTR's particularized interests under criterion 9(K). First, VTR claims that the railroad grade crossings and signalization of VTR's main rail line at Home Avenue, Flynn Avenue, Maple Street, and King Street have not undergone pre-construction "comprehensive diagnostic review," which represents a significant threat to public safety. (VTR Am. Party Status Mot. 4, filed Aug. 13, 2012.) Furthermore, according to VTR, "the state of Vermont has spent millions of taxpayer dollars maintaining and improving the railroad line" operated by VTR. Id. at 2. VTR claims that this significant public investment would be jeopardized by the Parkway as proposed, which requires the removal of two rail spurs "integrally connected to [VTR's] existing active railroad infrastructure." Id. In support of these claims, VTR offers to provide the specific testimony of a number of employees and one or more unnamed property owners along the two railroad sidings that would be removed in construction of the Parkway.

In light of this offer of evidence, VTR has sufficiently alleged a reasonable possibility of injury to its particularized interests protected under criterion 9(K). Accordingly, VTR is entitled to party status under 10 V.S.A. § 6085(c)(1)(E) with respect to criterion 9(K).

### D. Criterion 10

Criterion 10 requires that a development permitted under Act 250 be in conformance with "any duly adopted local or regional plan." 10 V.S.A. § 6086(a)(10). As a corporation providing commercial rail services in the City, VTR has an interest, distinct from that of the general public, in ensuring that a proposed project requiring an Act 250 permit conforms to provisions in duly-adopted City or regional plans, to the extent that the plans address rail services. Thus, VTR has a particularized interest under criterion 10 in ensuring that the Project

does not come into conflict with rail-related provisions of the City's 2011 Municipal Development Plan (MDP).

In its amended motion for party status, VTR cites to three sections of the MDP. Specifically, VTR emphasizes statements in the MDP that call for "maintaining remnants of the property's [waterfront urban reserve] railroad and industrial heritage"; making infrastructure investments that reserve "some capacity to load and unload freight by rail"; embracing "[g]reater use of rail for freight" as a "means of removing trucks from neighborhood streets"; and "[s]upporting improvements to the western corridor rail infrastructure and expansion of passenger rail services." (VTR Am. Party Status Mot. 5, filed Aug. 13, 2012.) VTR claims that the Parkway as permitted will, in violation of the MDP, eliminate historic railroad facilities in Burlington, prevent the development of Amtrak passenger rail service to the City, and inhibit the City's existing commercial rail services. VTR offers the testimony of a number of employees in support of its claims.

We conclude that VTR has alleged a reasonable possibility of injury to its particularized interests protected under criterion 10. VTR has cited specific language from a duly adopted municipal plan and offered to provide witness testimony indicating that the Parkway as proposed may not comply with the MDP. A decision by the Commission or this Court to grant a permit for the Parkway would affect VTR's interests because construction of the Parkway could result in noncompliance with the MDP. Thus, VTR is entitled to party status under 10 V.S.A. § 6085(c)(1)(E) with respect to criterion 10.

## Conclusion

For the reasons detailed above, we **GRANT** in part and **DENY** in part VTR's motion for party status, concluding that VTR is entitled to party status under Act 250 criteria 1(E), 9(K), and 10, but that VTR is not entitled to party status under Act 250 criterion 9(A).

Accordingly, and in response to the City's request that this Court strike those Questions from VTR's Statement of Questions that refer to Act 250 criteria under which VTR does not have standing to appeal the Commission's decision, we **DISMISS** VTR's amended Question 8, insofar as it raises a Question under criterion 9(A). To the extent that Question 8 also refers to issues related to criterion 10, we interpret VTR's amended Question 10 as fully raising any claim VTR may have under Act 250 criterion 10.

11

Lastly, we note that the City's motion to strike or clarify certain of VTR's Statement of Questions is not fully resolved by this decision. Accordingly, the Court will hold a status conference to discuss whether the City wishes to pursue its pending motion. Parties should also be prepared to provide the Court with an update on new events in this matter and how best to move this matter to resolution. A hearing notice accompanies this decision.

Done at Berlin, Vermont this 12th day of October, 2012.

Thomas G. Walsh,
Environmental Judge