## In re H. A. Manosh Corporation

[518 A.2d 18]

No. 85-222

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes, JJ.**

Opinion Filed September 26, 1986

368

*Spokes, Foley & Stitzel*, Burlington, for Petitioner-Appellee Garfield Road Association.

*Martin K. Miller* and *Michael H. Lipson* of *Miller, Eggleston & Rosenberg, Ltd.*, Burlington, for Respondent-Appellant.

**Hill, J.** Respondent, H.A. Manosh Corporation, appeals the decision of the Vermont Environmental Board (Board) finding its gravel pit operation to be no longer entitled to the statutory permit exemption accorded pre-existing uses under 10 V.S.A. ch. 151 (hereinafter referred to as Act 250). See 10 V.S.A. § 6081(b). We affirm.

In 1969, respondent purchased a forty-eight acre tract of land known as the Ferland gravel pit in Hyde Park, Vermont. The respondent and the petitioners, an association of neighboring landowners, agree that the pit operation constituted development commenced prior to June 1, 1970, the effective date of Act 250, and was therefore exempt from Act 250's permit requirement. See 10 V.S.A. § 6081. According to petitioners, however, respondent has substantially changed the Ferland pit operation and now must secure an Act 250 permit to continue development at the site.

Although the hearing officer could not determine the pre-1969 rate of extraction, respondent does not dispute the Board's finding that it has significantly expanded its operation at the site. Between 1958 and 1969, approximately one and a half acres had been excavated. Since 1969, more than fifteen acres have been uncovered. In 1973 or 1974, respondent installed a screening plant at the site to satisfy purchasers' demands for a more uniform aggregate material. The screening plant separates bank-run gravel into two or three grades of stone. It also separates out winter sand. Shortly thereafter, respondent added a stone-crusher, enabling it to make use of the "over-ride" material left over from the screening operation.

The Board found that the introduction of mechanized equipment constituted a cognizable physical change to the pre-existing development and that such changes have been accompanied by actual and potential impacts under several of the ten Act 250 criteria found in 10 V.S.A. § 6086(a). Accordingly, it ordered respondent to obtain the land use permit required by 10 V.S.A. § 6081 to continue its gravel operation.

Respondent claims on appeal that the Board has exceeded its authority as administrator of Act 250. It further contends that the Board's findings cannot support its determinations regarding substantial change. We disagree with both of these contentions.

In *In re Orzel,* 145 Vt. 355, 360, 491 A.2d 1013, 1016 (1985), this Court upheld the Board's authority to promulgate a rule defining substantial change as "any change in a development or subdivision which may result in significant impact with respect to any of the criteria specified in 10 V.S.A. section 6086(a)(1) through (a)(10)." See Rule 2(G), Act 250 Environmental Board Rules. Although such discussion may not have been strictly necessary to the decision in that case, we reaffirm it and find it to be controlling here.

Despite respondent's assertions to the contrary, we find no basis for the conclusion that the Board's definition of substantial change negates or undermines the legislature's intent in this area. It simply defines the parameters of the statutory exemption afforded pre-existing uses. Cf. *Vermont Brick & Block, Inc.* v. *Village of Essex Junction,* 135 Vt. 481, 483, 380 A.2d 67, 69 (1977) (an enlargement or expansion of nonconforming uses, as opposed to mere increase in business, violates spirit and purpose of zoning and is prohibited). As the Board explained, a two-part test must

be satisfied in order to invoke the Board's Act 250 jurisdiction under Rule 2(G). First, the Board must find a cognizable physical change to the pre-existing development. If such a change is found, the Board must conclude that the change has caused a significant impact under one or more of the ten criteria listed in § 6086 of Act 250.

As we stated in *Orzel, supra,* 145 Vt. at 361, 491 A.2d at 1016, "so long as the substantive requirements of the enabling statute are not compromised, the regulations are valid," and we will defer to the Board's expertise. See *Committee to Save the Bishop's House, Inc.* v. *Medical Center Hospital of Vermont, Inc.,* 137 Vt. 142, 150-51, 400 A.2d 1015, 1019-20 (1979) ("It is a 'venerable principle that construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong.' ") (quoting *Red Lion Broadcasting Co.* v. *Federal Communication Commission,* 395 U.S. 367, 381 (1969)).

Respondent contends that since it is the nature of the impact on the environment or surrounding land uses, and not merely the fact of change, that triggers Act 250 review, the Board must find an actual, as opposed to a potential, impact under one or more of the ten criteria listed in 10 V.S.A. § 6086. While we do not necessarily disagree with this assertion, the Board found that the changes instituted by respondent at the Ferland pit resulted in significant increase in the amount of dust generated at the site and an increase in the level of noise in neighboring properties. These findings satisfy the second prong of the Board's two-part test under Rule 2(G). See 10 V.S.A. § 6086(a)(1) (air pollution); 10 V.S.A. § 6086(a)(8)(E)(i) (impact upon environment or surrounding land uses applicable to operations extracting or processing earth resources). Although respondent contends that the Board made no findings concerning the pre-1970 levels of emission and thereby failed to engage in the type of comparative analysis required by statute, we find evidence in the record to support the Board's determination regarding increased levels of emission, and we further find that such evidence necessarily implied an increase over and above that which was present in 1969.

*Affirmed.*