## In re R.E. Tucker, Inc.

[547 A.2d 1314]

No. 86-283

Present: **Allen, C.J., Peck, Gibson, Dooley and Mahady, JJ.**

Opinion Filed April 29, 1988

*Young, Monte & Lyford,* Northfield, for Plaintiff-Appellant.

*Jeffrey L. Amestoy,* Attorney General, and *John H. Hasen,* Assistant Attorney General, Montpelier, for amicus Environmental Board.

**Dooley, J.** R.E. Tucker, Inc. (Tucker) was granted a land use permit pursuant to 10 V.S.A. §§ 6001-6092 (Act 250), relating to future operations at its existing commercial gravel extraction facility in the town of Berlin, and challenged the validity of certain permit conditions in an appeal to the Environmental Board (Board). The Board, after a hearing, ordered issuance of an amended permit, and the present appeal by Tucker followed.[*] We reverse the order of the Board in part and remand to the Board for issuance of a permit in accordance with this opinion.

Tucker owns and has conducted a commercial gravel operation on a forty-five acre tract in Berlin for many years. All parties agree that the operation pre-existed the enactment of the applicable regulatory scheme and, therefore, is exempted generally from the requirement of obtaining a land use permit under Act 250. See 10 V.S.A. § 6081(b). But in 1984, Tucker planned certain improvements to its facility, including installation of a scale and scale house, and a wash plant. The scale would permit sale by weight, and the wash plant would allow sifting and sorting of crushed gravel into sand and classified sizes of stone. These changes occurred without an Act 250 permit, on the basis of an informal advisory ruling by an administrative officer of the District Environmental Commission serving Berlin. Later, however, Tucker sought a formal declaratory ruling from the Environmen-

---

[*] No appellee has appeared in this matter, but the Attorney General of Vermont filed a brief on behalf of the Environmental Board as amicus curiae, which supported affirmance of the Board's order and related permit.

tal Board, and on February 27, 1985 the Board, in Declaratory Ruling #165, directed that Tucker apply for a permit covering not only the scale and scale hut, the wash plant and related crushing machinery and water facilities, but relocation of the access road to the development as well.

The Board's declaratory ruling is significant to this appeal because it adjudicated, at least in part, the extent to which the gravel operation was a pre-existing use and the extent to which there had been such a substantial change in the operation to create the need for a permit. See 10 V.S.A. § 6081(b). The Board found that the installation of new equipment, a new roadway and excavation of settling lagoons, together with the withdrawal of water from the Dog River, constituted changes requiring permit review. It further found, however, that review "should not extend to the entire gravel permit operation unless there is a significant increase in the volume of the material withdrawn by Mr. Tucker above the historic level of extraction" and that "recent extraction volumes do not deviate from the history of past operations [so that] . . . current extraction volumes have not resulted in a change."

Tucker applied for a land use permit, as directed by the Board, and on November 6, 1985 the District Commission issued a permit, together with findings, conclusions, and an order. Tucker appealed to the Board, arguing that eight of the conditions included in the permit were "excessive, unreasonable and unlawful." After hearings, the Board issued an order modifying the permit issued by the District Commission, making certain findings of fact which Tucker asserts were not substantiated by the record and retaining certain conditions which Tucker found objectionable.

In its appeal to this Court, Tucker objects to three of the permit conditions that remain: (1) a condition that requires it to file an annual affidavit stating that it did not extract over 20,000 cubic yards of material during the preceding year; (2) a condition that it obtain district environmental commission approval before installing any new pieces of major excavation or processing equipment; and (3) a condition that it not operate its gravel crusher in certain locations in the pit. We treat these in order.

I.

■ The Board included the permit condition (condition #12) that Tucker report extraction rates to determine whether it had exceeded historic extraction in any year and trigger the need for a permit for the entire operation. Tucker challenges both the Board's right to impose such a condition and the specifics of this condition. It maintains that the Board lacked an evidentiary basis for its finding that its historic maximum annual extraction rate was not in excess of 20,000 cubic yards. It argues that in the absence of a valid finding on extraction rate, the Board's condition #12, requiring an annual sworn statement that the permittee had not extracted more than 20,000 cubic yards, was invalid. We agree with Tucker on this point and hold the condition invalid without reaching the question of whether such a condition would ever be warranted.

The Board excluded evidence about extraction rates from its proceeding, evidently relying on its finding in Declaratory Ruling #165 that historical extraction rates had not been exceeded. Nevertheless, it used the 20,000-cubic-yard extraction figure in its amended condition #12. Thus, it made a key finding on a hotly contested issue after refusing to give Tucker the opportunity to submit evidence on the issue. This was error.

In its amicus brief, the State concedes the error but argues that even in the absence of valid findings as to the pre-existing extraction rates, we should not strike condition #12 but remand the matter to the Board for determination of the proper rate. The amicus argues that the Board has a valid interest in establishing the pit's pre-existing extraction level "so that, if this rate is exceeded, the Board can determine whether such excess constitutes a 'substantial change' necessitating a permit." It is true that without establishing a prior extraction rate, it cannot be determined whether future operation will constitute a substantial change. Cf. *In re Orzel*, 145 Vt. 355, 359, 491 A.2d 1013, 1015 (1985). But, in the present case, the Board determined in Declaratory Ruling #165 that while there were changes to the pre-existing operation at the gravel pit (alternative access roadway, settling lagoons, withdrawal of water from the Dog River, wash plant, scale and scale house), there was no extraction above the historic maximum. The findings and conclusions supporting the initial land use permit of November 6, 1985 also stated that "[o]nly when we

are shown the rates of extraction at the gravel pit have increased substantially over historic levels (in excess of 10%) would we be able to assert jurisdiction over Chandler Road traffic."

We think that it would be inappropriate to withhold Tucker's permit while ordering a remand for further evidence and fact-finding as the Board requests. So long as Tucker does not exceed its historic extraction rate, that factor does not contribute to an expansion of the nonconforming use. This is because extracting at or below the historic rate is not a change in the development. Cf. *In re H.A. Manosh Corp.*, 147 Vt. 367, 370, 518 A.2d 18, 20 (1986) (Board must first find a cognizable change and then determine whether the change impacts on the criteria listed in 10 V.S.A. § 6086). As the Board found that Tucker has never exceeded its historic rate of extraction, a comparison of current and historic rates is not relevant to the issuance of the permit at this time. Thus, absent the new equipment and other additions, Tucker would be entitled to operate as a pre-existing use without a new permit. See 10 V.S.A. § 6081(b); see also *Manosh*, 147 Vt. at 370, 518 A.2d at 20; *Orzel*, 145 Vt. at 359, 491 A.2d at 1015; cf. *Vermont Brick & Block, Inc.* v. *Village of Essex Junction*, 135 Vt. 481, 483-84, 380 A.2d 67, 69 (1977). Therefore, a determination of extraction rates—which is really a collateral issue in the instant case—should not stand as an impediment to an otherwise available permit.

We do not suggest that the Board is now precluded from considering extraction rates or that Tucker would ever be allowed to exceed historic rates. Indeed, it would be in the interest of both Tucker and the Board to determine those levels in an appropriate proceeding. Our holding is only that Tucker is entitled to a permit during the course of any further inquiry.

## II.

■ Tucker next argues that condition #16 is invalid for the same reasons it advanced as to condition #12. Condition #16, as amended by the Board in its June 2, 1986 findings and conclusions, states as follows:

> 16. The Permittee shall not install or use at the Chandler Road site any new pieces of major excavation or processing equipment without first providing written notice to the Commission, which notice shall describe the new equipment.

The in-kind replacement of existing machinery with substantially similar equipment does not require notice to the Commission. The Commission need not require an amendment to this permit to approve new equipment if no "substantial" or "material" change would be caused by the new equipment.

While there were no factual findings supporting condition #12, the findings supporting condition #16 are extensive. Based on the testimony of Tucker's acoustics expert, Dr. Paul Cartaglia, the Board found the noise generated by the wash plant and crusher (when the crusher is at the wash plant site) to be just under 60 dBA at one nearby residence and just under 50 dBA at a second, and that these levels are not significantly different from existing background noise in the neighborhood. But it is clear from the Board's findings that the noise levels, while acceptable under criteria 1 and 8, are only barely so:

Because noise impacts from the crusher have been accentuated by the addition of the wash plant, we are obligated to evaluate the aggregate impact of all noise generated by the Tucker pit. From this perspective we conclude that noise impact will not constitute "undue air pollution" if the crusher is not operated at any location on the site which is north of the 640' contour (generally the area north of the scale hut).

. . . .

But, should the crusher operate near the Guyette or Miller residences, we would conclude that the Applicant has failed to take generally available steps which a reasonable person would take to minimize noise impacts. We will, therefore, condition the permit we issue with a proscription against operation of the crusher at any location north of the scale hut, except for two weeks during the month of November each year; during November operations, the crusher cannot operate at any location within 400' of the Miller and Guyette property lines.

The Board expressly recognized that a change in the kind of equipment used by Tucker could affect existing terms and conditions of the permit relating to noise pollution:

> Finally, the addition of major equipment at the site could also result in increased impacts under, inter alia, Criteria 1 and 8. Therefore, it is reasonable to require prior Commission approval before the addition of such equipment *in order to assure the validity of our findings and conclusions.*

(emphasis added).

Unlike condition #12, which was not based on findings in the record and which was not therefore properly imposed to assure the continuing validity of other permit conditions, condition #16 is well supported by specific factual findings and limited by an express purpose that is countenanced by the statute. See 10 V.S.A. § 6086(a)(1) (Board must find that the development will not result in undue "air pollution"). Where findings of the Board with respect to questions of fact are supported by substantial evidence on the record, they are conclusive. 10 V.S.A. § 6089(c). As amended, condition #16 quite clearly requires no notice for "substantially similar equipment." It is true that if new equipment results in a "substantial" or "material" change, a new permit would be required, and that prior to Tucker's 1984 changes in its operation, when it operated as a pre-existing use under Act 250, it was not subject to any such reporting requirement. But Tucker has since obtained a land use permit, and if a properly imposed condition within that permit has the incidental effect of focusing more attention on future changes than would have existed prior to issuance of the permit, the result is not one that violates Tucker's rights or imposes any practical hardship on it. Cf. 10 V.S.A. § 6086(c).

### III.

 Tucker argues finally that condition #6, as amended in the Board's June 2, 1986 order, is not supported by the evidence. Condition #6 states:

> 6. At no time shall the Permittee operate its gravel crusher at any location north of the 640' contour as depicted on Board Exhibit #1.

Noise levels were measured with the crusher at the wash house and are the basis of specific findings concerning noise levels generated by the crusher at that distance. The 640' contour line is between the homes of the Millers and Guyettes and the wash

house, and there was testimony that noise levels would tend to elevate as the crusher was moved closer to the residences. The Board found that "when the crusher is moved to the area behind the Guyette residence (600' closer than the wash plant site), noise escalates substantially." The 640' contour line would allow the crusher to operate as close as about 400 feet from the Guyette residence. There were no sound level readings taken *at* the 640' contour line, and Tucker asserts that without precise information about noise impacts with the crusher at that contour line, the Board's order is not supported by the evidence.

First, it was Tucker's burden to demonstrate that the criteria of § 6086(a)(1), including the noise pollution, had been met. 10 V.S.A. § 6088(a). All of the decibel readings taken by Tucker's expert witness were from sound generated at the wash plant location (point A on Exhibit 1, a professional engineer's map of the subject area), some 1500 feet from the Miller residence. The witness testified on cross-examination, however, that the sound would be louder if the source were closer to the house although he could not state the specific noise levels at the residences in question if the source of the noise were closer to them. From this evidence, Tucker reasons that the Board could not draw any conclusions about what would happen if the crusher were to operate closer to the homes and could not frame an order based on such assumptions. Tucker's logic appears to be that a permit applicant can limit the Board's discretion in framing a noise pollution condition by simply restricting the kind of evidence it presents on an issue whose burden of proof it bears. We disagree.

Second, the evidence was adequate to support the Board's findings and the ensuing condition. Having precise and detailed acoustical evidence before it based on sound emanating from the wash plant location and monitored at several points at varying distances from the source, the Board has sufficient evidence before it to understand the acoustical dynamics of the problem, even assuming that topography and other site factors could affect sound levels from different sources on the Tucker property. Ironically, Tucker's argument would be ineffective if the Board had restricted the crusher to the area of the wash plant location, the point of sound emanation for the expert's readings and testimony and a point much farther away from the Miller and Guyette residences than the 640' contour.

The Board was free to exercise its discretion within a range of values supported by the evidence supplied by Tucker, even though there were no noise level readings based on a sound source located at the precise point chosen by the Board as reasonable. Tucker's argument to the contrary confuses the function of finding facts with that of framing remedial or quasi-remedial orders fairly reflecting the facts. See *Ferndale Heights Utilities Co. v. Illinois Pollution Control Bd.*, 44 Ill. App. 3d 962, 968, 358 N.E.2d 1224, 1228 (1976) (noise levels in stipulated compliance program served remedial purpose of statute and were not ad hoc rulemaking). Other cases may arise in the future in which sound readings are so source-specific that the trier of fact may not safely make any conclusions about reasonable separation distances measured from a different source point. Tucker has made no showing that this is such a case, and having presented the acoustical evidence as part of its burden of proof, its case for challenging the Board's conclusions from that evidence is unpersuasive.

*The matter is remanded to the Environmental Board, with directions to strike from its order of June 2, 1986 findings and conclusions relating to the maximum annual extraction rate of R.E. Tucker, Inc. and to issue an amended order and permit striking condition 12. The order of June 2, 1986 is otherwise affirmed, and except as amended in accordance herewith, the permit of the same date stands as issued.*