### In re L.W. Haynes, Inc., Declaratory Ruling

[556 A.2d 77]

No. 87-488

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed December 9, 1988

*Timothy J. O'Connor, Jr.*, Brattleboro, for Plaintiff-Appellant.

*Jeffrey L. Amestoy, Attorney General*, and *Mark J. Di Stefano, Assistant Attorney General*, Montpelier, for amicus curiae State of Vermont.

**Allen, C.J.** L.W. Haynes, Inc. owns a gravel business in Marlboro and appeals an Environmental Board ruling that an Act 250 permit is required to continue its present operations. We affirm.

The gravel pit in question is about 30 acres in size and has been operated since 1932. Appellant purchased the pit in 1953 and sold gravel to towns in the area, and possibly other purchasers, at levels of about 2000-4000 cubic yards per year through 1955. Extraction records are spotty thereafter, except for 1960 and 1961, when about 2000-3000 cubic yards were produced and removed in

each year. Aerial photographs indicate that between 1972 and 1982 "extraction activities . . . were minimal." As vegetation grew, the exposed area shrank from five acres to about three.

In 1987 an adjoining landowner requested an advisory opinion from the District II Environmental Commission as to whether the owner of the business was required to obtain a permit under Act 250, 10 V.S.A. § 6081(b). The landowner alleged that substantial increases in production had occurred at the site and other improvements had been undertaken.

The district coordinator on May 14, 1987 ruled that appellant was limited to levels of extraction preceding adoption of Act 250 until such time as it obtained an Act 250 permit. Appellant thereafter applied to the Board for a declaratory ruling, pursuant to 3 V.S.A. § 808. The Board considered the case de novo, 10 V.S.A. § 6089(a), and issued its declaratory ruling confirming that a land use permit was necessary, due to a substantial change in operations at the pit. The Board specifically found that approximately 7,500, 15,600, and 20,500 cubic yards of gravel were extracted in 1984, 1985 and 1986 respectively. In 1987 approximately 16,308 cubic yards of gravel, 357 yards of loam, and 1,979 yards of crushed stone had been extracted. More importantly, the Board found other changes, including establishment of operations on a "continual basis," widening of an access road, installation of a permanent crusher, location of an office and shop trailer on the property, installation of two fuel tanks, and an increase in the exposed area to about 11 or 12 acres. In addition the Board found that the size of the gravel trucks hauling from the pit had increased from about five to about fourteen cubic yards of carrying capacity.

As to the results of these changes, the Board specifically found:

> 13. The increased extraction has resulted in a significant increase in the truck traffic on the town roads which provide access to the pit. Truck trip levels, which before 1970 and even 1984 were insignificant on a daily basis, by 1986 had increased to as many as 80 or 90 loaded trucks per day leaving the pit.

The Board concluded that, taken together, the increased extraction and the associated alterations in the facility and its manner of operation constituted a "substantial change" to a preexisting

development under 10 V.S.A. § 6081(b), which states, in relevant part:

> (b) . . . Subsection (a) of this section shall apply to any substantial change in such excepted subdivision or development.

Appellant does not cite or distinguish *In re Orzel*, 145 Vt. 355, 491 A.2d 1013 (1985), or *In re H.A. Manosh Corp.*, 147 Vt. 367, 518 A.2d 18 (1986), cases in which we upheld the application of § 6081(b) to gravel pit operations. Rather, appellant bases its entire argument on a point not raised in *Orzel* or *Manosh*, that the gravel pit is a "diminishing asset" not subject to the "substantial change" rule of 10 V.S.A. § 6081(b). Appellant cites cases from other jurisdictions for this principle, but these cases simply hold that the tract size of a pit cannot be limited to the area of extraction at the time of the enactment at issue. *Syracuse Aggregate Corp.* v. *Weise*, 51 N.Y.2d 278, 414 N.E.2d 651, 434 N.Y.S.2d 150 (1980); *County of Du Page* v. Elmhurst-Chicago Stone Co., 18 Ill. 2d 479, 165 N.E.2d 310 (1960); *Hawkins* v. *Talbot*, 248 Minn. 549, 80 N.W.2d 863 (1957).

The only case cited by appellant that includes within the scope of a nonconforming use the right to "add to, or increase the size of [the] equipment . . . even though this increases [the] output and intensifies the use . . . ." is *Moore* v. *Bridgewater Township*, 69 N.J. Super. 1, 23, 173 A.2d 430, 442 (1961). But the court in that case relied not only on a state statute, but on a local ordinance that was more lenient than the statute, providing that "any structure which is a Nonconforming Structure by reason of the nature of its use, may . . . be extended and, as extended, may continue to be devoted to the Nonconforming Use . . . ." *Id.* at 21, 173 A.2d at 440.

The Board's findings in the present case are clear and unchallenged, and we are not persuaded that the principles set forth in *Orzel* and *Manosh* should be altered or reconsidered.

*Affirmed.*