STATE OF VERMONT

| SUPERIOR COURT<br>Vermont Unit | ENVIRONMENTAL DIVISION<br>Docket No. 124-9-13 Vtec |
| --- | --- |
| Dorr et al Earth Extraction Appeal | DECISION ON THE MERITS |

This case involves a sand and gravel extraction operation on two parcels of land in the Town of Manchester, Vermont (the Town). The subject property is roughly located between a residential development known as Westview Estates and Town Shed Road, just east of U.S. Route 7, and is owned by Dorr Oil Co. and MGC, Inc. The extraction operations on both parcels pre-date the Town's zoning ordinances, and therefore constitute a pre-existing use.

On May 7, 2013 the Town Planning Director and Zoning Administrator (ZA) issued an Administrative Opinion letter to Donald Dorr stating that a zoning permit was needed to conduct earth extraction activity on either parcel. Donald Dorr, Dorr Oil Company, Inc., and MGC, Inc. (Appellants) appealed this opinion to the Town of Manchester Development Review Board (DRB).

In an August 21, 2013 decision, the DRB affirmed the ZA's determination that a zoning permit was necessary for all expansions[1] of the surface area of extraction on land owned by Dorr Oil Co. and MGC, Inc. Appellants timely appealed that decision to this Court. Appellants ask this court to conclude that an expansion in the area being excavated does not require a permit. The Town takes the opposite position.

The Court completed a site visit to the Property on the morning of October 16, 2014 immediately followed by a merits hearing at Bennington District/Family Court in Bennington, Vermont. Appearing at the site visit and merits hearing were Appellants and their lawyer Nathan H. Stearns, Esq, and the Town through its lawyer Robert E. Woolmington, Esq. Several individuals who testified at the merits hearing also attended the site visit.

---

[1] The Court notes that although the parties utilize the word "expansion," the relevant provision of the Manchester Zoning Ordinance refers to "enlargement." The Court understands the terms to be interchangeable and the parties use of "expansion" to refer to an enlargement under the Ordinance.

Based upon the evidence presented at trial, including that which was put into context by the site visit, the Court renders the following Findings of Fact.

**Findings of Fact**

1.  The property at issue is a parcel consisting of approximately 89 acres of land located off Barnumville Road in the town of Manchester (the Property). The Property is roughly situated between a residential development known as Westview Estates and Town Shed Road, just east of U.S. Route 7.

2.  On July 22, 1987, Logan Dickie, Jr. and Phyllis Beattie Dickie conveyed the Property to Vermont to Real Estate Equities, Inc. (REEI).

3.  On June 7, 1994, REEI conveyed approximately 47 acres of the northern portion of the Property (the Northern Parcel) to Dorr Oil Company. This included an approximately 50 foot wide access road to the Northern Parcel that REEI had acquired after the 1987 conveyance.

4.  Also on June 7, 1994, REEI conveyed approximately 42 acres of the southern portion of the Property (the Southern Parcel) to Donald Dorr in his individual capacity.

5.  On May 9, 1995 REEI executed a document entitled "Corrective Warranty Deed" that purported to convey the Northern Parcel to Donald Dorr in his individual capacity. That same day, Mr. Dorr executed a warranty deed that purported to convey the Northern Parcel to MGC, Inc., a corporation controlled by Mr. Dorr.

6.  A significant deposit of sand and gravel extends throughout the Property.

7.  At least three areas on the Southern Parcel and one area on the Northern Parcel were used for sand and gravel extraction operations prior to the adoption of the Town of Manchester Zoning Ordinance in 1970.

8.  The parties dispute the extent, timing, and continuation of those extraction operations.

9.  The parties agree that there has been expansion of the areas that have been physically disturbed in order to extract sand and gravel from the Property.

10. The parties dispute the extent, location, and timing of this expansion.

11. On November 9, 1972, Albert Rossi obtained Act 250 Land Use Permit #8B0018 to develop a 19-lot subdivision on a parcel of land abutting what is now the Northern Parcel.

12. On November 24, 1987, REEI and Richard Booth obtained an amendment to Land Use Permit #8B0018 (#8B0018-1) that reconfigured the previously approved subdivision.

13. On July 25, 1990, Richard Booth obtained Vermont State Subdivision Permit EC-8-0760 authorizing a 19-lot subdivision on the Northern Parcel on behalf of REEI.

14. On September 7, 1990, Richard Booth obtained Act 250 approval for a 19-lot subdivision on the Northern Parcel under Permit #8B0018-2. The Permit was amended on September 25, 1992 as Permit #8B0018-3 and again on October 11, 1994 by the current owner of the Northern Parcel, Donald Dorr, as Permit #8B0018-4.

15. In a decision dated May 14, 1990, the Town of Manchester Zoning Board of Adjustment (ZBA) approved a 19-lot subdivision on the Northern Parcel and Town Permit # 89-04-15 was issued to the then-owner Richard Booth on May 22, 1990. The ZBA decision prohibited the extraction of gravel except as part of the construction of the infrastructure and residential uses contemplated in the subdivision permit. Gravel extraction for sale was expressly prohibited.

16. On October 14, 1992, the ZBA approved amendments to Town Permit # 89-04-15 related to the access road and the use of a fire pond in lieu of water storage tanks, as originally approved. A Permit was issued based on this decision on November 17, 1992.

17. On May 7, 2013 the Town Planning Director and Zoning Administrator (ZA) issued an Administrative Opinion letter to Donald Dorr stating that a zoning permit was needed to conduct earth extraction activity on either the Northern or Southern Parcels. Donald Dorr, Dorr Oil Company, Inc., and MGC, Inc. (Appellants) appealed this opinion to the Town of Manchester Development Review Board (DRB).

18. In an August 21, 2013 decision, the DRB affirmed the ZA's determination that a zoning permit was necessary for any expansion of the area where extraction occurs on the Property.

19. Appellants timely appealed the DRB's August 21 decision to this Court.

**Discussion**

The parties primarily dispute what constitutes the "expansion" of a preexisting sand and gravel extraction operation such that a municipal permit is required. The parties agree on two facts: first, that the gravel extraction operations on the Southern and Northern Parcels existed prior to the current zoning ordinance, and second, that the areas where the extraction operations occur have expanded since the adoption of the zoning ordinance.

I.      **Questions 1 & 2**

Appellants' Statement of Questions (SOQ) raises the following two questions relating to what constitutes an "expansion" of a preexisting sand and gravel extraction operation:

1.  Whether or not continuation of the lawful, pre-existing use of Appellants' property as a sand and gravel extraction operation, including the natural expansion thereof, where said use existed prior to the enactment of Section 8.3.2 of the Town of Manchester Zoning Ordinance, constitutes, without more, an "enlargement of the area on which such operations are conducted," such that a zoning permit is required pursuant to Section 8.3.2 of the Town of Manchester Zoning Ordinance.

2.  Whether or not the natural continuation of Appellants' pre-existing sand and gravel extraction use of their property, without an expansion of the lot or parcel of land on which the use is occurring, can constitute an "enlargement of the area on which such operations are conducted" pursuant to Section 8.3.2 of the Zoning Ordinance.

The parties disagree on the scope of the Court's review of these two questions. Appellants assert that Questions 1 & 2 set forth a very narrow review of whether the enlargement of the area on which the sand and gravel extraction operations are conducted requires Appellants to obtain a permit under § 8.3.1. Appellants point to the DRB's decision in support of the narrow scope of these questions, which focused on the "enlargement of the area" language in Section 8.3.2 as the relevant standard for determining whether a permit is required. The Town argues that the Court's review should be more broad and include whether an expanded use requires a permit.

Our jurisdiction is limited to the issues presented in statements of questions filed by appellants. In re Garen, 174 Vt. 151, 156 (2002). The Vermont Supreme Court has directed, however, that the literal phrasing of issues raised in statements of questions cannot practically be considered in isolation from the decision below that prompted the appeal. In re Jolley

4

Assocs, 181 Vt. 190, 194 (2006). Neither Question 1 or 2 raises issues related to expanded use. Furthermore, the DRB's August 21, 2013 decision determined that the standard within the Zoning Ordinance for determining whether a zoning permit is required for Appellants' pre-existing earth-extraction operation is whether there has been an enlargement of the area on which such operations are conducted. In re Appeal of Donald Dorr, et al, Findings of Fact, Conclusions and Order, at 2–3 (Town of Manchester Dev. Review Bd. Aug. 21, 2013).

This Court cannot review issues not raised in a statement of questions. Village of Woodstock v. Bahramian, 160 Vt. 417, 424 (1993). If the Town wanted this Court to review the standard applied by the DRB, it was required to file a notice of cross-appeal and raise the issue in a statement of questions. We therefore conclude that our review of whether a permit is required under the current ordinance is limited to whether there has been an enlargement of the area on which the sand and gravel extraction operations are conducted.

We look to the Town of Manchester Zoning Ordinance (the Ordinance) for guidance in answering Questions 1 and 2. The Ordinance has a section dedicated to "Earth Products Removal." Ordinance § 8.3. This section allows for the removal of "[t]opsoil, rock, sand, gravel, or similar materials" in any district, provided a special permit is issued by the Development Review Board. Id. at § 8.3.1. In addition to satisfying all criteria for conditional use approval, "including considerations of noise and vibration," this special permit also requires consideration of grading plans, drainage plans, and reclamation of the site after conclusion of the operation, as well as special consideration for removal of earth resources from streambeds. Id. The Ordinance further provides that "[e]xisting sand and gravel, or other extractive operations, must conform with the bylaw from its effective date with respect to any *enlargement of the area on which such operations are conducted*." Id. at § 8.3.2 [emphasis added]. Thus, we consider whether § 8.3.2 requires Appellants to obtain a permit under § 8.3.1 in order to continue sand and gravel extraction on the Property in the context of the above findings of fact.

The familiar rules of statutory construction apply to the interpretation of a zoning ordinance. In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. We will "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance." Id. Where the plain meaning of the ordinance is clear it must be enforced and no

5

further interpretation is necessary. <u>Vermont Alliance of Nonprofit Orgs. v. City of Burlington</u>, 2004 VT 57, ¶ 6, 177 Vt. 47 (citing <u>Hill v. Conway</u>, 143 Vt. 91, 93 (1983)). In construing statutory or ordinance language, our "paramount goal" is to implement the intent of its drafters. <u>Colwell v. Allstate Ins. Co.</u>, 2003 VT 5, ¶ 7, 175 Vt. 61. We will therefore "adopt a construction that implements the ordinance's legislative purpose and, in any event, will apply common sense." <u>In re Laberge Moto-Cross Track</u>, 2011 VT 1, ¶ 8, 189 Vt. 578 (quotations omitted).

The Town argues that based on the plain language of section 8.3.2, any enlargement of the area being excavated requires a permit because the area being excavated is the area where operations are conducted. Appellants argue that under the "diminishing assets" doctrine, the majority rule in the United States, the parcel containing the resource itself constitutes the area on which the operations are conducted. Appellants argue that if the Court adopts the diminishing assets doctrine, a mere expansion of the area being excavated since the adoption of the zoning ordinance cannot be grounds to require a permit under the Ordinance as a matter of law. As one court has described the diminishing assets doctrine:

> In a quarrying business the land itself is a material or resource. It constitutes a diminishing asset and is consumed in the very process of use. Under such facts the ordinary concept of use . . . must yield to the realities of the business in question and the nature of its operations. We think that in cases of a diminishing asset the enterprise is "using" all that land which contains the particular asset and which constitutes an integral part of the operation, notwithstanding the fact that a particular portion may not yet be under actual excavation. It is in the very nature of such business that reserve areas be maintained which are left vacant or devoted to incidental uses until they are needed. Obviously it cannot operate over an entire tract at once.

<u>Du Page County v. Elmhurst-Chicago Stone Co.</u>, 165 N.E.2d 310, 313 (Ill. 1960).

In our October 10, 2014 decision on summary judgment, we provided the following conclusion. After considering all evidence introduced during our merits hearing, we affirm this conclusion:

> To date, neither this Court, nor the Vermont Supreme Court, has expressly adopted the diminishing assets doctrine with respect to local zoning regulations. Prior Act 250 decisions are, however, illustrative of the issue before the Court. In considering whether preexisting gravel extraction operations require a State Land Use (Act 250) Permit, the

6

former Environmental Board has adopted a similar rule based on similar reasoning:

> The Board has previously ruled that contiguous expansion of the excavation area within the pre-existing tract is not a change, provided that the excavation operation is expanded and operated in essentially the same manner as it was before [the adoption of Act 250]. It is in the nature of gravel pits to continue to expand the extraction area while following a gravel vein.

E.g. <u>Re: Dale E. Percy, Inc.</u>, Declaratory Ruling No. 251, Findings of Fact, Conclusions of Law, and Order at 5 (Vt. Envtl. Bd. Mar. 26, 1992) (citations omitted).[2] We find no reason why this same logic and reasoning should not apply within the municipal land use context. Thus, we conclude that the area being used by an earth extraction operation includes not only the area of land presently disturbed but the entire parcel containing the resources on which extraction activities are taking place as well. An enlargement of the area of disturbed land, without any other changes, does not therefore require a permit under Ordinance § 8.2.3.

This determination, however, does not mean there are no limits on preexisting sand and gravel extraction operations, not does it infer that such an operation may never need a permit. Ordinance § 8.3.2 states that a pre-existing sand and gravel extraction operation needs a permit for "any enlargement of the area on which operations are conducted." While we conclude that the diminishing assets doctrine informs the definition of "area on which such operations are conducted" under § 8.3.2, we do not review or determine in this proceeding whether § 8.3.2 eliminates the requirement that preexisting operations obtain authorization before increasing extraction rates, truck traffic, or the type or amount of equipment in use.[3]

---

[2] The Vermont Supreme Court has held that the diminishing assets doctrine does not obviate the requirement that a preexisting development receive an Act 250 permit if it undergoes a substantial change. <u>In re L.W. Haynes, Inc.</u>, 150 Vt. 572, 574 (1988). It is within the context of these Act 250 cases that the Environmental Board has applied reasoning substantially similar to the diminishing assets doctrine and the Board's reasoning was not disturbed by the Vermont Supreme Court on appeal. <u>Re: Robert and Barbara Barlow</u>, Declaratory Ruling No. 234, Findings of Fact, Conclusions of Law, and Order, at 8–9 (Vt. Envtl. Bd. Sept. 20, 1991) (applying rule similar to diminishing assets doctrine), aff'd, <u>In re Barlow</u>, 160 Vt. 513 (1993).

[3] Our October 10, 2014 Decision on Summary Judgment further stated:

> Case law also supports our finding that an increase in extraction rates, truck traffic, or the type or amount of equipment in use requires a permit. "One of the primary goals of zoning is to gradually eliminate nonconforming uses because 'they are inconsistent with the purpose of developing use-consistent areas in communities.' As such, we strictly construe zoning ordinances allowing nonconforming uses." <u>In re Casella Waste Management, Inc.</u>, 2003 VT 49,

Finally, evidence was offered that the Northern Parcel is subject to both State and Municipal permits that prohibited sand and gravel extraction operations. The parties disagree as to the status of these permits.[4] While it is inefficient to decline to review whether these permits have any bearing on questions 1 and 2, we conclude that the narrow scope of our review in this appeal does not allow us to consider the impact, if any, of these State and Municipal permits.

## II.     Questions 3, 4, & 5

Appellants raise the following three related questions within their Statement of Questions (referred to hereinafter as the "JAM Golf Challenge"):

3. Whether or not the provisions of Section 8.3.2 of the Zoning Ordinance specify sufficient conditions and safeguards to guide applicants and decision makers, or whether the language in said section is standardless and vague, such that Section 8.3.2 should be deemed unenforceable.

4. Whether or not Section 8.3.2 provides sufficient standards or definitions of its terms to allow an applicant or decision maker to determine the meaning of the terms "enlargement" or "area" in the context of Section 8.3.2.

5. Whether or not the language of Section 8.3.2 provides sufficient notice to applicants as to what would constitute an "enlargement" of an "area" as required by due process of law.

---

¶ 9, 175 Vt. 335 (quoting In re Gregoire, 170 Vt. 556, 559 (1999) (mem.)) (internal citations omitted). Within the Act 250 context, increased extraction rates at a preexisting gravel extraction operation and corresponding increases in the number and size of trucks entering and exiting the operation, which may result in a significant impact under the ten Act 250 Criteria, constitute a "substantial change" to the preexisting operation which requires an Act 250 Permit or amendment. In re Barlow, 160 Vt. 513, 522–23 (1993). We see no reason why significant changes in extraction rates, truck traffic, the type or amount of equipment being used, and similar factors would not constitute an expansion of a preexisting nonconforming sand and gravel extraction operation as well.

As we conclude above in this merits decision, our scope of review in this appeal is narrow and does not include additional further consideration or analysis concerning extraction rates, truck traffic, or the type or amount of equipment in use. Thus, within this merits decision we do not revisit this further analysis. To the extent necessary, any conclusions reached in our October 10 Decision on Summary Judgment are hereby revised in accordance with V.R.C.P. Rule 54(b).

[4] In an October 2014 decision, the Vermont Supreme Court affirmed that the Northern Parcel is subject to a valid Act 250 Land Use Permit (LUP) and that any continued gravel extraction requires an amendment to that LUP. Natural Res. Bd. Land Use Panel v. Donald Dorr, MGC, Inc., and Dorr Oil Co., 2015 VT 1, available at http://info.libraries.vermont.gov/supct/current/op2013-215.html.

The parties provided no evidence or argument on these three questions pre-trial, during trial, or post-trial. We consider these JAM Golf Challenges to argue that § 8.3.2 of the Ordinance contains "unduly vague and unenforceable" terms and that this Court should therefore void these provisions as unconstitutional.

We remind the parties that when reviewing a municipal land use decision, we begin with the presumption that a zoning regulation is constitutional. In re Highlands Development Co., LLC, No. 194-10-03 Vtec, slip op. at 13 (Vt. Envtl. Ct. Feb. 2, 2010) (Wright, J.) (citing Hunter v. State, 2004 VT 108, ¶ 31, 177 Vt. 339). "In the context of land-use regulation, our approach to complaints of standardless, arbitrary discretion focuses on the criteria for due process and equal protection." In re Pierce Subdivision Application, 2008 VT 100, ¶ 19, 184 Vt. 365 (citing In re Handy, 171 Vt. 336, 345-46 (2000). Regulations must therefore "specify sufficient conditions and safeguards" to guide both applicants and decisionmakers. In re Appeal of JAM Golf, LLC, 2008 VT 110, ¶ 13, 185 Vt. 201 (citing Town of Westford v. Kilburn, 131 Vt. 120, 122 (1973).

As to due process, we consider whether the regulation provides standards or guidelines that "give notice to those seeking an understanding of what is regulated." In re Irish Construction Application, No. 44-3-08 Vtec, slip op. at 6 (Vt. Envtl. Ct. Nov. 2, 2009) (Durkin, J.) (citing In re Handy, 171 Vt. 336, 344-45, 764 A.2d 1226 (2000)). This requires "guidance as to what may be fairly expected from landowners" and cannot leave an applicant "uncertain as to what factors are to be considered by the [municipal panel]." JAM Golf, 2008 VT at ¶ 14 (citing In re Miserocchi, 170 Vt. 320, 325 (2000)); Handy, 171 Vt. at 345 (citing Kilburn, 131 Vt. at 124). As to equal protection, we consider whether the regulation provides standards "that sufficiently guide municipal decisions." Handy, 171 Vt. at 344–45 (citing Kilburn, 131 Vt. at 124). This requires "a definite and certain policy and rule of action for the guidance of the [decision maker]" and cannot allow for the "exercise of discretion in an arbitrary or discriminatory fashion." State v. Chambers, 144 Vt. 234, 239 (1984) (citing State v. Auclair, 110 Vt. 147, 163 (1939); Pierce, 2008 VT at ¶ 20 (citing Kilburn, 131 Vt. at 124).

We will consider two factors to determine whether a regulation is void for vagueness and thus unconstitutional: first, whether the regulation provides basic standards sufficient to establish "a definite and certain policy and rule of action" to guide the decsionmaker and

9

prevent the exercise of discretion in an arbitrary or discriminatory fashion; and second, whether the regulation is "sufficiently precise that an ordinary person using the means available and ordinary common sense can understand the meaning and comply." State v. Chambers, 144 Vt. 234, 239 (1984) (citing Citing State v. Auclair, 110 Vt. 147, 163 (1939)); Rogers v. Watson, 156 Vt. 483, 491 (1991) (citing Brody v. Barasch, 155 Vt. 103, 111 (1990) (not necessary to "detail each and every act or conduct that is prohibited" as long as language "conveys a definite warning as to proscribed conduct when measured by common understanding and practices").  The regulatory provision must therefore define the particular resource or feature to be protected and provide standards against which the decisionmaker will assess the application relative to those features. Highlands, No. 194-10-03 Vtec, slip op. at 15.

We remind the parties, however, that land use regulation is "an area where some imprecision and generality is necessary and inevitable" and that some degree of flexibility is permitted. Rogers, 156 Vt. at 491; see also Handy, 171 Vt. at 349; Kilburn, 131 Vt. 124 ("On one hand the standards governing the delegation of such authority should be general enough to avoid inflexible results, yet on the other hand they should not leave the door open to unbridled discrimination.").  It is not unconstitutional if a regulation is general enough to avoid inflexible results as long as it is "accompanied by some ability of landowners to predict how discretion will be exercised" and specificity sufficient to prevent "ad-hoc decision making that is essentially arbitrary." Highlands Development Co., LLC, No. 194-10-03 Vtec, slip op. at 14-15 (citing JAM Golf, 2008 VT at ¶13-14); Handy, 171 Vt. at 349; Miserocchi, 170 Vt. at 325.  For this reason, we consider the regulation in the context of the entire ordinance so that "even if some of the bylaws' objectives are general," it may be constitutional "as long as other provisions impose specific limits to guide and check the [decisionmaker's] discretion." Rogers, 156 Vt. at 491; Pierce, 2008 VT 100 at ¶ 24 ("By providing both general and specific standards for [] review, the bylaw strikes an appropriate balance between providing guidance to the Commission and avoiding inflexible requirements which would defeat the creativity and flexibility required to effectuate the goals of the [bylaws].")).

Appellants' challenge focuses on the language "enlargement" and "area" and Appellants seem to assert that these terms are of the type of standardless language which gives the

decision maker unfettered discretion. As noted above, "[o]ur goal in interpreting [a zoning regulation], like a statute, 'is to give effect to the legislative intent.'" In re Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22 (quoting Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49 (1986)). We will "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the [regulation]." In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. Because zoning regulations limit common law property rights, we resolve any uncertainty in favor of the property owner. Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22.

Ordinance Section 8.3.2 states:

> Existing sand and gravel, or other extractive operations, must conform with this bylaw from its effective date with respect to any enlargement of the area on which such operations are conducted.

Section 8.3.2 clearly defines sand and gravel extraction operations as the particular resource or feature to be protected and provides "any enlargement" as a standard relative to those features on review. Furthermore, we believe an ordinary person using the means available and ordinary common sense can understand the meaning and comply with § 8.3.2. Rogers v. Watson, 156 Vt. 483, 491–91 (1991). We therefore disagree with Appellants assertion and conclude that § 8.3.2 provides sufficient guidance to prevent unbridled discrimination. To conclude otherwise would allow any legal dispute over terms or language within an ordinance to potentially result in the municipal ordinance being rendered unenforceable. This would be an irrational result which we always endeavor to avoid. See, e.g. In re Stowe Club Highlands, 164 Vt. 272, 280 (1995) (rejecting construction of a zoning regulations that lead to irrational results

It is only when the regulatory scheme, considered in its entirety, provides limitless discretion and opens the door to arbitrary and discriminatory decisions that the presumption of constitutionality be overcome and the offending regulations struck down. The Ordinance at issue in this case provides sufficient standards by the plain meaning of the phrase "any enlargement" of existing extractive operations, combined with our clear legal precedent, thereby providing clear guidance to the municipal panel, or this Court on appeal. We therefore conclude that § 8.3.2 is enforceable.

**III.** **Question 6**

The final question raised by Appellants is as follows:

6. Whether or not section 8.3 of the Zoning Ordinance renders Applicants' pre-existing sand and gravel operation a non-conforming use pursuant to Section 1.14 of the Zoning Ordinance.  If the answer is affirmative, does the diminishing asset doctrine apply; and if the diminishing asset doctrine is applicable, is the Applicants' ongoing sand and gravel operation on its existing lands an enlargement of the area pursuant to Section 8.3.2 so as to require a special permit.

The Ordinance at Section 1.14 provides the following two definitions:

> Nonconforming use: Use of land that does not conform to the present bylaw. . .

> Non-conforming Use: A use of land or of a structure which does not comply with the provisions of this bylaw. . .

The Ordinance allows gravel extraction operations in every district so long as a special permit is obtained.  Ordinance at § 8.3.1 ("Topsoil, rock, sand, gravel, or similar materials may be removed or taken from any district . . . .").  Absent an expansion of the area of extraction a preexisting use does not require a special permit.  Thus, Applicants pre-existing gravel extraction operations are not a nonconforming use under the Ordinance.  Having reached this conclusion we need not address the remainder of SOQ 6.

## Conclusion

A lawfully preexisting sand and gravel extraction operation may continue to expand along a vein of sand or gravel within the greater parcel without the expansion alone constituting an enlargement of the area on which such operations are conducted under the Town of Manchester Zoning Ordinance.  The questions of whether other significant changes to a lawfully preexisting use may require that the operation come into compliance with the current zoning regulations is not presently before the Court.  Keeping in mind our limited review in the present matter, we conclude that Appellants' operation does not require a zoning permit under the Town of Manchester Zoning Ordinance.

12

We also conclude that the Ordinance at issue in this case provides sufficient standards to guide the municipal panel, or this Court on appeal, and therefore § 8.3.2 is not standardless or vague and is therefore enforceable.  Finally, we conclude that Applicants' pre-existing gravel extraction operations are not a Nonconforming use or a Non-conforming Use under the Ordinance.

Electronically signed on February 27, 2015 at 10:30 AM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division